98 N.J. Super. 263 (1967)
237 A.2d 265
IN RE: PROCEEDINGS BY THE COMMISSIONER OF BANKING AND INSURANCE, STATE OF NEW JERSEY, PURSUANT TO THE PROVISIONS OF N.J.S.A. 17:22-16 AND N.J.S.A. 17:22-6.24, TO FINE PARKWOOD COMPANY, A CORPORATION, 661 SHUNPIKE ROAD, MADISON, NEW JERSEY, AND JOHN APGAR, THE ACTIVE OFFICER OF THE CORPORATION, OR TO REVOKE OR SUSPEND THE EXISTING INSURANCE LICENSES OF THE PARKWOOD COMPANY AND JOHN APGAR.
Superior Court of New Jersey, Appellate Division.
Argued November 20, 1967.
Decided December 19, 1967.
*266 Before Judges KILKENNY, CARTON and MALECH.
Mr. Ralph N. Solodar for appellants.
Mrs. Marilyn Loftus Schauer, Assistant Attorney General, for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by CARTON, J.A.D.
Parkwood Company and John Apgar, licensed insurance agents and brokers, appeal from a decision of the Commissioner of Banking and Insurance determining that Parkwood had demonstrated unworthiness as a licensee N.J.S.A. 17:22-6.16, 17:22-6.24. They also challenge his actions in imposing a $500 fine and ordering repayment of return premiums, suspending their licenses pending compliance therewith, and revoking the licenses in the event of noncompliance within 15 days. These determinations are based on the Commissioner's finding that appellants failed to repay a return premium due to Chemsol, Inc. in the amount of $8,242.32 and were indebted to *267 Transamerica Insurance Company in the sum of $31,825.18 since December 1965.
The evidence at the hearing established that Zurich Insurance Company, for whom Apgar was an approved policy-writing agent until August 12, 1964, issued through Parkwood a comprehensive general liability policy for a premium of $34,000 insuring property of Chemsol, Inc. Chemsol paid Parkwood the $34,000 for the policy. Zurich cancelled this policy on December 1, 1964 and credited $8,242.32, the amount of the return premium due from it, to Parkwood on the Chemsol account. Despite numerous requests from Chemsol, Parkwood never repaid this amount to Chemsol. Parkwood asserted at the hearing that its refusal to repay the $8,242.32 was for the reason that it was entitled to an offset consisting principally of $6,200 from Chemsol for binder charges on insurance procured through Parkwood from four other insurance companies for the period July 15, 1963 to November 1964.
Representatives of all four insurance companies categorically denied that they had ever received a binder form or copy thereof; no policies were ever issued for any such alleged insurance coverage, and that they had never billed for it. Appellants sought to establish the existence of the coverage by claiming they had sent a copy of the binder to Chemsol. On this basis appellants asserted at the hearing before the Commissioner and on this appeal that the companies would become liable by Parkwood's acts as their agent and, in any event, Parkwood would be liable to Chemsol to the extent of the alleged coverage in the event of a loss.
The Commissioner found that the $8,242.32 returned to Parkwood by Zurich was due to Chemsol, and that although Parkwood and Chemsol had done business on an account basis, there were minimal debts to apply against that return premium. He accepted as credible and persuasive the testimony of the representatives of the four insurance companies with which insurance had allegedly been placed, and found *268 that Parkwood was not entitled to any offset from any of these companies.
With respect to the charge concerning the indebtedness of Transamerica Insurance Company, the Commissioner found that Parkwood was indebted to Transamerica for the months of July through December 1965 in the amount of $31,825.18, but noted that an agreement had been entered into by these parties whereby Parkwood had paid $15,000 of this total and agreed to return the remainder due at the rate of $1,000 monthly until the entire balance was paid.
Since this appeal involves the action of an administrative agency, our function as an appellate court is to examine the evidence to determine whether there is substantial evidence in the record to support the agency's determination. Where such evidence appears, that determination should not be disturbed. Campbell v. Dept. of Civil Service, 39 N.J. 556, 562 (1963); Atkinson v. Parsekian, 37 N.J. 143 (1962).
We are satisfied from our review of the record that the findings of the Commissioner were based upon substantial evidence and fully sustained the determination that the charges constituted unworthiness on the part of the licensees-appellants in violation of N.J.S.A. 17:22-6.16(h). An insurance broker acts in a fiduciary capacity and is held to a high standard of conduct. Close and continuous scrutiny of the licensee's exercise of his license and the establishment of standards and guidelines are necessary to maintain the high standard of conduct and the degree of fidelity the statute envisions. As a means of accomplishing this objective, the Legislature has conferred on the Commissioner authority to suspend or revoke the license of a licensee if he has demonstrated unworthiness, bad faith, incompetency or dishonesty N.J.S.A. 17:22-6.16(h). Such suspension or revocation may be ordered as an alternative or addition to other penalties.
*269 The evidence revealed beyond question that appellants departed from that standard of conduct prescribed by the statute.
The evidence established that Parkwood knowingly, intentionally and without cause, for over three years, withheld repayment of a large return premium due to the assured Chemsol, and further withheld payment of some $31,825.15 due to Transamerica Insurance Company from December 1965.
Appellants' attempt to justify the refusal, despite frequent demands, to pay to Chemsol the return premium due it on the basis of a claimed debt or offset, wholly failed. Their assertion that everybody concerned felt there was fire insurance coverage for Chemsol placed by Parkwood is not justified by the record. The unimpeached evidence of the representatives of the four insurance companies that their companies never received the alleged binders, that policies were never issued or bills submitted for the insurance coverage supposedly written in 1963, suggests that the alleged debt was entirely fictitious and fully warranted the Commissioner's finding that no coverage existed.
Appellants' argument that Chemsol might be able to hold these companies liable in the event of a loss on the theory that Parkwood was acting as their agent, and that, in any event, appellants assumed responsibility for any such loss, is beside the point. It further demonstrates appellants' utter lack of comprehension of their responsibilities under their license. If coverage had been authorized, Chemsol, as the assured, would be entitled to the issuance of the policies and the assurance of the protection such policies afforded. The possibility of recovery against the companies in the event of a loss on the basis of estoppel as the result of the act of Parkwood as its agency, or against the agent itself on the basis of its representation of agency, can hardly be described as an adequate substitute for acknowledged policy coverage.
*270 Appellants' contention that the penalties imposed were unreasonable and in violation of the insurance laws is likewise devoid of merit.
The order to show cause brought by the Commissioner orders the appellants to show cause why they "should not be fined or their existing licenses should not be suspended or revoked." This order, and the determination made by the Commissioner, was in accordance with N.J.S.A. 17:22-6.16, 17:22-6.16a and 17:22-6.24.
N.J.S.A. 17:22-6.16 provides that the Commissioner:
"* * * may as an alternative to or in addition to other penalties provided by law, revoke the license of any such licensee, or refuse to renew the same, or suspend same for a limited period of time * * *." (Emphasis added)
The same provision is applicable to revocation of certificates of authority under N.J.S.A. 17:22-6.24.
Therefore, "in addition to other penalties provided by law," the Commissioner is authorized to suspend or revoke licenses and certificates of authority of insurance brokers and agents.
N.J.S.A. 17:22-6.16a then provides that:
"In any case in which the commissioner has the power to revoke, refuse to renew or suspend the license of any insurance broker, agent or solicitor, the commissioner shall also have the power to impose as an alternative to such revocation, refusal to renew, or suspension, a penalty which the licensee may elect to pay to the Department of Banking and Insurance in lieu of such revocation, refusal to renew, or suspension. The maximum penalty shall be $1,000.00 for each such separate offense."
As an alternative to revocation, the Commissioner elected to impose a penalty of $500 on appellants, with the proviso that if the fine was not paid and the refund paid in 15 days from the time the matter became final, appellants' licenses would be revoked. The Commissioner clearly has the power to order such action by virtue of his statutory authority.
*271 However, appellants contend that the Commissioner lacked power to determine that there was no insurance coverage placed by Parkwood for Chemsol in 1963, and consequently had no power to order appellants to pay the return premium of $8,242.32 to Chemsol, Inc., its successors or assigns.
Pursuant to the provisions of N.J.S.A. 17:1-1 the Commissioner of Banking and Insurance is charged with the responsibility of executing all laws relative to insurance. Therefore, he is presumed to have expertise in the field of insurance, which expertise will be given great weight by the courts. Cooley's Anemia Blood and Research Foundation v. Legalized Games of Chance Control Commission, 78 N.J. Super. 128 (App. Div. 1963), certification denied 40 N.J. 212 (1963); Freud v. Davis, 64 N.J. Super. 242, 246 (App. Div. 1960).
Whether there is coverage under an insurance policy or, more fundamentally, whether a policy was ever issued, are certainly questions within his authority to determine. Cf. N.J.S.A. 17:22-6.16(c), authorizing the Commissioner to determine whether a broker has misappropriated or converted to his own use or illegally withheld money belonging to an insurer or an insured or beneficiary.
The Commissioner held that the existence of coverage was not established because no charge for coverage was made to appellants and no debit arose from the binder in question to apply against an acknowledged credit. The facts clearly substantiate these conclusions and, as the Commissioner found, "if premiums are not charged to an agent by his principal, the agent has nothing to support the taking of offsetting debits." Nor was the Commissioner precluded from making this determination simply because it involved or required the incidental determination of a legal question. The courts have long held that an administrative agency can determine questions of law within its area of expertise.
Additionally, the courts have often stated that the powers of an administrative agency should be liberally *272 construed to permit the agency to achieve the task assigned to it, and that such administrative agency has such implied incidental powers as may reasonably be adapted to that end. Shelton College v. State Bd. of Education, 48 N.J. 501, 524 (1967); Allendale Field and Stream Ass'n v. Legalized Games of Chance Control Comm., 41 N.J. 209, 217 (1963); Cammarata v. Essex County Park Comm., 26 N.J. 404, 417 (1958). Clearly, it is in the public interest for the Commissioner of Banking and Insurance to order the repayment of a premium retained by a licensee without right. His power to require repayment is necessarily implied if he is to perform the duties imposed upon him by the Legislature.
Contrary to appellants' contention, the penalty imposed in this case is clearly reasonable. Appellants are holders of brokers' and agents' licenses in the State of New Jersey. In order to obtain such license they must be of good reputation and worthy of such license. N.J.S.A. 17:22-6.6(d). Their duty to act in a fiduciary capacity in aiding, soliciting, negotiating and effecting contracts of insurance for companies, insureds and prospective insureds, N.J.S.A. 17:22-6.1, 17:22-6.2, necessitated that they handle monies of other persons in a trustworthy manner.
For agents or brokers to withhold payment of a return premium of $8,242.32 approximately three years without justification, and to fail to pay another insurance company over $30,000 for approximately two years, is to act in a manner unworthy of a licensee. The Commissioner imposed a minimal fine of $500. Pending payment of such fine and return premium, the licenses of Parkwood and John Apgar were suspended. The Commissioner's determination as to the penalty was entirely reasonable and proper under the circumstances.
We perceive no substance to appellants' further contention that Parkwood was improperly ordered to repay the return premium because it did not know who was actually entitled to it. The witness Meagher indicated he was authorized to *273 receive payment on behalf of Chemsol or its assignees. Indeed, there appears to be no genuine dispute as to who is entitled to payment of the return premium. If Parkwood was in doubt on this score, it was free to interplead, in timely fashion, any claimants and to apply to the Commissioner for an appropriate modification of the order. It failed to do so.
Finally, appellants advance the contention that N.J.S.A. 17:22-6.16(h) and 17:22-6.24(g) are invalid because unworthiness and incompetency constitute inadequate standards. This contention is likewise without merit.
"Incompetency" has long been regarded and used as an appropriate standard of conduct for judging the performance of public employees in various removal proceedings. See, e.g., Campbell v. Dept. of Civil Services, supra. Cf. N.J.S.A. 18:13-17.
The term "unworthiness" is equally appropriate as a standard of conduct. Cf. Goodley v. New Jersey Real Estate Comm'n, 29 N.J. Super. 178 (App. Div. 1954), where the court defined "unworthiness" in the context of N.J.S.A. 45:15-17(e), a provision nearly identical in language and purpose to those involved here. In Goodley the court said:
"The word `unworthiness' * * * signifies a lack of those ethical qualities that befit the vocation. * * * By including the matter of unworthiness in N.J.S.A. 45:15-17(e), the Legislature has charged the Commission with the high responsibility of maintaining ethical standards among real estate brokers * * *." (at pp. 181-182)
The determinations of the Commissioner are in all respects affirmed.