182 N.J. Super. 237 (1981)
440 A.2d 469
JAMES J. SHEERAN, COMMISSIONER OF INSURANCE, PLAINTIFF-RESPONDENT,
v.
PROGRESSIVE LIFE INSURANCE COMPANY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 16, 1981.
Decided December 15, 1981.
*241 Before Judges BISCHOFF, KING and POLOW.
Louis Zemel argued the cause for appellant (Marvin Lehman on the brief).
Mark I. Siman, Deputy Attorney General, argued that cause for respondent (James R. Zazzali, Attorney General of New Jersey, attorney; Andrea M. Silkowitz, Deputy Attorney General, of counsel and Mark I. Siman on the brief).
The opinion of the court was delivered by POLOW, J.A.D.
In July 1979 the Department of Insurance charged Progressive Life Insurance Company (PLICO) with engaging in unfair claims settlement practices, unfair competition and other deceptive practices. Extensive hearings were conducted by an administrative law judge (ALJ) who concluded that PLICO had engaged in unfair practices in violation of the Unfair Claim Settlement Practices Act, N.J.S.A. 17B:30-2. In her initial decision Administrative Law Judge Dower-LaBastille made specific, detailed factual findings on each of 114 charges against PLICO. She also found that "a terrible injustice" had been done to 17 individual claimants, not represented by counsel, who were entitled to receive insurance benefits aggregating in excess of $17,000 which had been unjustifiably denied. Although she recommended that a cease and desist order be issued as to each of the improper practices specifically set forth in her opinion, she also determined that the Commissioner of Insurance lacks jurisdiction to order "restitution" (i.e., payment of insurance benefit claims).
The Commissioner in his final decision accepted and adopted the findings and conclusions of Judge Dower-LaBastille except for her determination that he lacked jurisdiction to order payment *242 of claims to individual claimants by way of "restitution." Hence, he modified the initial decision to include "restitution" of the disputed benefits to the 17 individual claimants in the amounts set forth, together with 8% interest, payable within 30 days from the date of his order.
PLICO did not make the "restitution" payments but instead filed its notice of appeal to the Appellate Division from the final agency determination. Shortly thereafter the Commissioner instituted suit in the Law Division for imposition of statutory penalties against the insurer for its failure to comply and enjoining further noncompliance with the "restitution" order. The Law Division judge refused to consider the merits of the agency determination then on appeal. He nonetheless ordered PLICO to comply with the "restitution" order pursuant to R. 2:9-1(a), refused to stay enforcement of the order pending appeal and imposed a $5,000 penalty for previous noncompliance. PLICO paid the $5,000 penalty to avoid contempt proceedings, posted a cash bond to guarantee such payments to claimants as it might ultimately be required to make and obtained a stay of the final agency and Law Division rulings pending appeal. Its appeal from the Law Division judgment has been consolidated with that from the agency determination.
PLICO attacks the final agency decision and the judgment, asserting that the administrative law judge should have disqualified herself; that the agency acted arbitrarily, unreasonably and in violation of due process; that there cannot have been 114 separate violations of the Unfair Claims Settlement Practices Act and that the Commissioner lacks power to order payment of insurance benefits to individual claimants.
PLICO insists that Judge Dower-LaBastille should have disqualified herself because she previously had been associated with the Commissioner of Insurance in private law practice and as a hearing officer appointed by him to the Department of Insurance. We cannot agree that her rejection of PLICO's demand for her recusal from the administrative law hearing was "highly improper" as it is characterized by appellant.
*243 Judge Dower-LaBastille is not disqualified under the express terms of the applicable statute, N.J.S.A. 2A:15-49, by R. 1:12-1 or by the Code of Judicial Conduct, Canon 3. She developed expertise as a hearing officer in the Department of Insurance prior to the establishment of the Office of Administrative Law within the Executive Branch of State Government. N.J.S.A. 52:14F-1. Appellant suggests no specific evidence of bias, prejudice or impropriety on her part. Although the criteria applicable to members of the judiciary may differ in some respects from those which apply to administrative adjudicators, see 3 Davis, Administrative Law Treatise (2 ed. 1980), § 19:1 et seq., we conclude that similar standards are generally applicable. Judge Dower-LaBastille had no interest in the outcome other than her responsibility to act in her official capacity according to law. Her primary concern was, as it should be, not that the Commissioner of Insurance be the "successful" litigant, but rather that he arrive at the proper factual and legal conclusions. He, after all, must make the ultimate findings of fact and conclusions of law in his "final decision" by accepting or rejecting any or all of the recommendations in the ALJ's "initial decision."
Upon establishment of the administrative law courts it was inevitable that many hearing officers previously employed by their respective agencies would be transferred to the new Office of Administrative Law, and many of them were. It would be unfortunate, indeed, if they could not now be assigned to hear cases referred from the agencies with which they had been previously associated. The expertise they have developed over the years is a valuable asset. Without some other reason therefore, there is no inference of bias based solely upon such prior association with the agency or department head who, under our statutory scheme, continues to have authority "to adopt, reject or modify the findings of fact and conclusions of law of any administrative law judge." N.J.S.A. 52:14F-7; N.J.S.A. 52:14B-10.
*244 We neither expect nor desire the "total absence of preconceptions." See In re J.P. Linahan, Inc., 138 F.2d 650, 651-52 (2 Cir.1943). There is no suggestion here that the judge manifested any prejudgment of the adjudicative facts or any bias during the conduct of the hearing. Nor has appellant challenged any of her 257 findings of fact as being dictated by prejudice. Several counts of the order to show cause were dismissed and she rejected one of the Department's major demands as not within the Commissioner's jurisdiction. The Commissioner, in turn, rejected Judge Dower-LaBastille's legal conclusion in this regard, asserting that he has the jurisdiction to order payment of policy benefits.
In essence, we believe that creation of the Office of Administrative Law has in fact freed the former hearing officers from possible domination by the department head to whom the proposed findings of fact and conclusions of law are directed. Whether any such influence may still exist, consciously or subliminally, is a question which is appropriately left to the conscientious judgment of the individual judge. See R. 1:12-1(f). We discern no basis for the conclusion that such influence existed here.
Defendant next argues that in failing to promulgate administrative rules and regulations governing the conduct of insurance companies, the Department could not determine, consistent with due process, whether PLICO's business practices were unacceptable. It maintains that there were no standards established for investigation of insurance company practices nor any guidelines adopted with which insurance firms must comply. Although PLICO concedes that an applicable statute exists, it urges that the "vague language" therein vests investigative officials with unbridled discretion to determine whether a company's practices are acceptable. PLICO fears that the absence of established regulations will cause the practices of similarly situated insurance firms to be treated differently.
*245 The Commissioner asserts that the pertinent standards enumerated in N.J.S.A. 17B:30-1 et seq. sufficiently regulate practices in the insurance industry and adequately alert companies of that which is prohibited conduct. He urges that "there is no rigid legal or constitutional requirement that legislative standards must be translated into formal regulations before they may be applied to a particular case."
N.J.S.A. 17B:30-13.1 provides:
No person shall engage in unfair claim settlement practices in this State. Unfair claim settlement practices which shall be unfair practices as defined in N.J.S. 17B:30-2, shall include the following practices:
Committing or performing with such frequency as to indicate a general business practice any of the following:
a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;
b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
c. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;
d. Refusing to pay claims without conducting a reasonable investigation based upon all available information;
e. Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
g. Compelling insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;
h. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;
i. Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured;
j. Making claims payments to insureds or beneficiaries not accompanied by statement setting forth the coverage under which the payments are being made;
k. Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

l. Delaying the investigation or payment of claims by requiring an insured, claimant or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

*246 m. Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;
n. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.
N.J.S.A. 17B:30-13.2 provides that:
Failure of any person to maintain a complete record of all the complaints which it has received since the date of its last examination shall be a practice prohibited by N.J.S. 17B:30-2. This record shall indicate the total number of complaints, their classification by line of insurance, the nature of each complaint, the disposition of these complaints, and the time it took to process each complaint. For purposes of this section "complaint" means any written communication primarily expressing a grievance.
Plaintiff views the quoted statutory provisions as promulgating specific standards of performance with which insurance companies must comply and against which their practices may be judged; defendant sees them as unacceptably vague and therefore inadequate to guide an insurance company's conduct.
Notwithstanding defendant's argument to the contrary, it is well established that an administrative agency may properly and constitutionally operate without formal, particularized rules and regulations. See NLRB v. Bell Aerospace Co., 416 U.S. 267, 294-295, 94 S.Ct. 1757, 1771-1772, 40 L.Ed.2d 134 (1974); Securities & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 201-203, 67 S.Ct. 1575, 1579-1580, 91 L.Ed. 1995 (1947). In Chenery Corp., the United States Supreme Court reviewed action taken pursuant to statute by the Securities and Exchange Commission. Although no specific rule had been promulgated by the Commission to deal with the problem confronting it, the Commission was found to possess the power to perform its statutory duty. Id. at 201-202, 67 S.Ct. at 1579-1580. "To hold that the Commission had no alternative ... but to approve the proposed transaction, while formulating any general rules it might desire for use in future cases of this nature, would be to stultify the administrative process. That we refuse to do." Id. at 202, 67 S.Ct. at 1580. Unforeseeable problems may arise which must still be resolved despite the absence of administrative regulation or rule. Or, where the agency's experience with a specific *247 problem is limited, the absence of a specific regulation may prevent the rigidification of tentative judgment into an absolute rule. Similarly, a problem may be so specialized or varying in nature that it is impossible to capture it within the parameters of a general regulation. Id. at 203, 67 S.Ct. at 1580. In such situations, the agency must have the "power to deal with the problems on a case to case basis if the administrative process is to be effective." "[T]he choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency." Ibid. See NLRB v. Bell Aerospace Co., supra, 416 U.S. at 294, 94 S.Ct. at 1771.
We have expressed our concurrence with the Chenery view in Data Access Systems, Inc. v. State, 117 N.J. Super. 95, 102 (App.Div. 1971), rev'd on other grounds, 63 N.J. 158 (1973). There we held that the New Jersey Bureau of Securities "must be afforded a fair opportunity, based on experience, to evolve statutory standards within the framework of the law." Although sustained experience with the standards contained in the relevant statute may dictate "guidelines which should then be embodied in appropriate regulations," we accepted the Bureau's case-by-case approach to problems. Accordingly, we rejected appellant's challenge that the statutory language, "unreasonable promoters' participation," is so broad that basic fairness requires promulgation of a rule defining the term. Id. at 103. The agency's expertise must be recognized together with "the necessity of using a flexible approach to the matters that come before it. The rigid application of standards suggested by appellant would deny to the Bureau the discretion so essential to proper application of its expertise." Ibid. See, also, Jansco v. Waldron, 70 N.J. 320, 328 (1976); Danton v. State, 141 N.J. Super. 308, 313 (App.Div. 1976).
Although "the Legislature may not vest unbridled or arbitrary power in the administrative agency but must furnish a reasonably adequate standard to guide it, ... the exigencies of modern government have increasingly dictated the use of general *248 rather than minutely detailed standards in regulatory enactments under the police power." In re Heller Suspension, 73 N.J. 292, 303 (1977). It is for this reason that "the powers of an administrative agency should be liberally construed to permit the agency to achieve the task assigned to it, and that such administrative agency has such implied incidental powers as may reasonably be adapted to that end." Ibid., quoting In re Banking & Ins. Comm'r v. Parkwood Co., 98 N.J. Super. 263, 271-272 (App.Div. 1967). Accordingly, the court was unpersuaded that absent statute or regulation defining "unprofessional conduct," the Board could not properly act to revoke the license of a registered pharmacist. Id. at 304-305. However, "the decision as to whether an agency's adjudicatory ruling is proper will vary from case to case and depend upon all the relevant circumstances." Id. at 305. Defendant's argument notwithstanding, such terms as "reasonably," "promptly," "reasonably clear" and "reasonable explanation," which are found in N.J.S.A. 17B:30-13.1, are not unconstitutionally vague. See, e.g., Trap Rock Indus., Inc. v. Kohl, 59 N.J. 471, 483 (1971), cert. den. 405 U.S. 1065, 92 S.Ct. 1500, 31 L.Ed.2d 796 ("moral responsibility"); N.J. Ass'n of Health Care Facilities v. Finley, 83 N.J. 67, 82 (1980), app.dism. sub nom. Wayne Haven Nursing Home v. Finley, 449 U.S. 944, 101 S.Ct. 342, 66 L.Ed.2d 208 (1980) ("reasonable number," "just and reasonable rate on equity"); Troy Hills v. Parsippany-Troy Hills Tp. Council, 68 N.J. 604, 628-630 (1975) ("just and reasonable"); Ward v. Scott, 11 N.J. 117, 123-124 (1952) ("public convenience and necessity" and "necessary to control or prevent unfair, unjust, destructive or demoralizing practices"). The standards set forth in N.J.S.A. 17B:30-13.1 "dra[w] specificity from each setting." Trap Rock Indus., Inc. v. Kohl, supra, 59 N.J. at 483. They are "general in terms but measured by common understanding [they] fairly and adequately conve[y] [their] meaning to all concerned." Laba v. Newark Bd. of Ed., 23 N.J. 364, 384 (1957). More is not constitutionally required. In fact, a general standard is often "all that may sensibly be expected if delegated authority is to be *249 equal to the sundry situations which may arise and for which a more precise formula cannot be devised without hurtful inflexibility." Elizabeth Fed. S & L Ass'n v. Howell, 30 N.J. 190, 194 (1959).
PLICO's violations of the statute were fully exposed and fully explored in the administrative hearing. Specific, detailed factual findings and legal conclusions were set forth. There was no ad hoc legislation involved. The standards of performance articulated in the statute are neither so imprecise nor so vague as to offend due process. Rather, the guidelines contained in the Unfair Claim Settlement Practices Act are sufficiently informative to instruct insurance companies in the regulation of their business practices and to adequately guide the department in its review of those practices. The Legislature could not have intended that insurers' claim settlement practices go unmonitored or uncorrected until promulgation of administrative rules. See Trap Rock Indus., Inc. v. Kohl, supra, 59 N.J. at 483.
There is no indication that the final decision of the Commissioner or the initial decision on which it was based were arbitrary, capricious or unreasonable. Henry v. Rahway State Prison, 81 N.J. 571 (1980); Campbell v. Civil Service Dep't, 39 N.J. 556 (1963).
PLICO next argues that the Commissioner improperly concluded that 114 separate statutory violations had been committed. PLICO suggests that since the consequences "are severe and may result in loss of rights," the administrative proceedings are quasi-criminal in nature. Hence it concludes that since the 114 alleged violations are all of the same nature, they should merge in one offense. We find that argument frivolous.
Although one may not be punished twice for the same offense, State v. Best, 70 N.J. 56, 60 (1976), we do not deal here with a criminal or quasi-criminal proceeding. Furthermore, the acts with which defendant is charged are not a single offense but separate and multiple offenses. The separate acts charged violated the rights of different persons or manifested distinctly different violations of the rights of a single individual. We *250 conclude that PLICO was properly determined to have committed 114 separate violations of the Unfair Claim Settlement Practices Act.
We next turn to defendant's argument that the Commissioner lacks authority to order insurance benefit payments referred to in the administrative decision as "restitution" to the 17 individual claimants. It is conceded that the Unfair Claim Settlement Practices Act contains no direct reference to such power. Hence appellant insists that absent specific legislative authorization, the Commissioner exceeded his authority and could not lawfully order payment of individual claims. Instead, it insists that "the only forum for a money judgment remedy on a contract claim is in the courts, not in the office of the Commissioner of Insurance."
As the administrative law judge recognized, the "restitution" ordered here was not reimbursement to the individuals of premiums paid but rather the payment of disputed claims. Hence she concluded "that the proper and only forum for a money judgment remedy on a contract claim is in the judicial branch, not the executive branch." We agree with her conclusion that an Executive Department head lacks implied power to act as a court of claims. Absent "explicit statutory grant of power", no such jurisdiction may be assumed by an administrative agency. Where there is reasonable doubt that a particular power resides in an administrative agency, the power is denied. Swede v. Clifton, 22 N.J. 303, 312 (1956). Considerations of sound judicial administration lead us to conclude that jurisdiction to adjudicate such claims, involving as they do here interpretation of contractual rights and remedies, is originally cognizable in the Law Division where such plenary proceedings as may be necessary can be provided. Frapaul Constr. Co. v. Transportation Dep't, 175 N.J. Super. 84, 92 (App.Div. 1980); see, also, Pfleger v. N.J. State Highway Dep't, 104 N.J. Super. 289, 293 (App.Div. 1968).
Nevertheless, the administrative tribunal was also required to deal with each count alleging unfair practices, including those *251 charging failure to pay legitimate claims. Detailed evidence was taken and specific findings of fact were made. Under those circumstances it would be imprudent and wasteful to require each claimant to institute a new action at law for breach of contract and produce the same evidence heard by the administrative law judge. We conclude, therefore, that the action instituted in the Law Division by the Commissioner was an appropriate vehicle for prosecution of the 17 individual claims as a limited class action.
Our Supreme Court has recently recognized "that there are important goals to be achieved from the prudent and selective application in administrative proceedings of such doctrines as res judicata, collateral estoppel, and the single controversy rule." Hackensack v. Winner, 82 N.J. 1, 31 (1980). We are satisfied that the concept enunciated in Winner is equally appropriate here. The findings of an administrative law judge, when fully and amply supported by substantial credible evidence in the record and amply enlarged by specific detailed findings of fact, can suffice to provide the Law Division with prima facie evidence of validity of the individual claims by a limited application of the doctrine of res judicata. Where, as here, no jury demand has been made, the administrative findings are sufficient to shift the burden to defendant to go forward with proof to justify denial of relief to any individual member of the class of claimants identified in the agency determination. "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." United States v. Utah Constr. & Min. Co., 384 U.S. 394, 421-422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). See, also, cases collected in Davis, Administrative Law Treatise § 18.03.1 to § 18.07 at 116 to 123 (1980 supp.).
We conclude, therefore, that a remand to the Law Division is appropriate. Defendant shall be given the opportunity to produce any additional evidence it may deem relevant with regard *252 to the 17 individual claims for insurance benefits. Appropriate notice should be given to the individual claimants to enable them to participate and produce additional proofs should they deem it necessary. In connection with any individual claim on which additional proofs are presented, new findings of fact and conclusions of law will be required. On those claims which are not the subject of additional proofs, the doctrine of res judicata may be applied and a final judgment entered as to each such claim.
Since the penalty imposed was based upon PLICO's failure to comply with the Commissioner's order to "make restitution" of the individual claims for insurance benefits, it cannot stand. Imposition of the penalty is reversed without prejudice to the right of the Department of Insurance to institute such further proceedings therefor as it may deem appropriate. The judgment of the Law Division is vacated and the matter remanded for further proceedings consistent with this opinion. In all other respects and except as modified herein, the administrative order appealed from is affirmed. We do not retain jurisdiction.