604 A.2d 172

IN THE MATTER OF THE COMMISSIONER OF INSURANCE'S CERTIFICATION OF AMENDMENT TO THE NEW JERSEY AUTOMOBILE FULL INSURANCE UNDERWRITING ASSOCIATION PLAN OF OPERATION.

Superior Court of New Jersey
Appellate Division

Argued November 14, 1991—Decided March 12, 1992.

Before Judges KING, GRUCCIO and BROCHIN.

*Kevin L. Lilly* argued the cause for appellant State Farm Mutual Automobile Insurance Company, (*Jamieson, Moore, Peskin & Spicer,* attorneys; *Suzanne McSorley,* of the firm of *Smith, Stratton, Wise, Heher & Brennan,* attorneys for appellant Allstate Insurance Company, on the joint brief).

*William DeSantis* argued the cause for appellant Hanover Insurance Company (*Kenney & Kearney,* attorneys; *Suzanne McSorley,* on the joint brief).

*Bressler, Amery & Ross,* attorneys for appellant Continental Casualty Company, on the joint brief.

*McCarter & English,* attorneys for appellant Indemnity Insurance Company of North America, on the joint brief.

*Cuyler, Burk & Matthews,* attorneys for appellant Liberty Mutual Insurance Co., on the joint brief.

*Carpenter, Bennett & Morrissey,* attorneys for appellant Prudential Property & Casualty Co., on the joint brief.

*Budd, Larner, Gross & Picillo, Rosenbaum, Greenberg & Sade,* attorneys for appellant Travelers Indemnity Co., on the joint brief.

*Hugh P. Francis* argued the cause for respondent New Jersey Automobile Full Insurance Underwriting Association (*Francis & Berry,* attorneys; *Hugh P. Francis,* of counsel, *Peter A. Olsen,* on the brief).

*Karen L. Suter,* Deputy Attorney General, argued the cause for respondent State of New Jersey, Department of Insurance (*Douglas S. Eakeley,* Acting Attorney General of New Jersey, attorney; *Paul H. Schneider,* Deputy Attorney General, of counsel, *Louis A. Haszu,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

BROCHIN, J.A.D.

By this opinion, we decide two consolidated appeals which challenge the validity of an amendment to the plan of operation of the New Jersey Automobile Full Insurance Underwriting Association which provides for the initiation and funding of legal proceedings asserting monetary claims for the benefit of the Association against its servicing carriers.[1] The appellants

---

[1] The amendment which appellants have challenged was adopted on April 19, 1990. On March 20, 1991, the insolvency trustee for the Association adopted a plan of operation which, among other things, ratified the April 19, 1990 amendment. Appellants have appealed from both the 1990 amendment and from the 1991 trustee's plan. The two appeals have been consolidated by order of this court.

are eight automobile liability insurers[2] which have acted as servicing carriers for the Association. We hold that appellants have failed to establish the invalidity of the disputed provisions.

The New Jersey Automobile Full Insurance Underwriting Association was created by the New Jersey Automobile Full Insurance Availability Act. *L.* 1983, *c.* 65, *N.J.S.A.* 17:30E–1 *et seq..* The Association was intended to "provide automobile insurance for qualified [New Jersey] applicants who cannot otherwise obtain such insurance...." *N.J.S.A.* 17:30E–2. It was established as an unincorporated, nonprofit association of all insurers licensed to transact automobile insurance in New Jersey. *N.J.S.A.* 17:30E–4. Its board of directors was directed to adopt a plan of operation, subject to approval of the commissioner of insurance, which would prescribe the "methods and means," consistent with the Act, for accomplishing its statutory objective by engaging "servicing carriers" which were to issue insurance policies on its behalf and to receive "reasonable and adequate compensation" for their services. *See N.J.S.A.* 17:30E–6a, –7e. This plan of operation could be amended either by the commissioner of insurance or by the board of directors of the Association at the commissioner's suggestion or with his approval. *N.J.S.A.* 17:30E–6b, c, d.

The New Jersey Automobile Full Insurance Availability Act failed to accomplish its purpose.[3] Effective on March 12, 1990,

---

[2]Allstate Insurance Company, Hanover Insurance Company, Indemnity Insurance Company of North America, Prudential Property and Casualty Insurance Company, Continental Casualty Company, Liberty Mutual Insurance Company, State Farm Mutual Automobile Insurance Company and Travelers Indemnity Company.

[3]The conditions in the New Jersey automobile insurance market with which that Act was intended to deal, the operation of the Association, the enactment of the Fair Automobile Insurance Reform Act of 1990, and the replacement of the Association by the MTF (Market Transition Facility) are described in some detail in *State Farm v. State,* 124 *N.J.* 32, 40–45, 590 *A.*2d 191 (1991); *In re Commissioner of Insurance's Orders,* 252 *N.J.Super.* 260, 599 *A.*2d 906 (App.Div.

the Legislature enacted its successor, the Fair Automobile Insurance Reform Act of 1990, *N.J.S.A.* 17:33B–1 *et seq.* In that statute, the Legislature declared that, "[n]ot only has the cost of the insurance product itself escalated, but the subsidies that most drivers contribute to support the financially troubled New Jersey Automobile Full Insurance Underwriting Association have made the system a burden rather than a benefit to the citizens of the State." *N.J.S.A.* 17:33B–2d. The Reform Act describes the condition of the Association as follows:

[T]he New Jersey Automobile Full Insurance Underwriting Association ... is currently operating in a substantially impaired financial state with an operating deficit which the association has estimated to be in excess of $3 billion and ... based upon the results of a recent claim and underwriting review and financial audit, the Commissioner of Insurance stated that mismanagement by the insurance companies acting as servicing carriers cost the association $908 million between its inception in 1984 and 1988.... if it were a licensed insurer, [the Association] would likely be declared financially impaired or insolvent....

*N.J.S.A.* 17:33B–3a.

The Legislature declared that because of these conditions, the public interest required, among other things,

eliminat[ing], over time, ... the New Jersey Automobile Full Insurance Underwriting Association, and certain of the market subsidies currently funding its losses ... [and] provid[ing], through the appointment of an insolvency trustee, for the orderly evaluation, prioritization and satisfaction of obligations payable on behalf of the association....

*N.J.S.A.* 17:33B–2h(2), (3). Pursuant to the Reform Act, the commissioner of insurance appointed an insolvency trustee for the New Jersey Automobile Full Insurance Association. *N.J.S.A.* 17:33B–3b.(1); *N.J.S.A.* 17:33B–1 *et seq.* The Association was prohibited from issuing or renewing any automobile insurance policy after September 30, 1990. *N.J.S.A.* 17:30E– 7(e).

On February 20, 1990, shortly before the effective date of the Reform Act, an administrative proceeding entitled *Jasper S. Jackson, et al., Petitioners, v. The Aetna Casualty and Sure-*

1991); and *Matter of Aetna Cas. and Sur. Co.,* 248 *N.J.Super.* 367, 591 *A.*2d 631 (App.Div.1991), *certif. denied,* 126 *N.J.* 385, 599 *A.*2d 162 (1991).

*ty Company, et al., Respondents* was commenced in the Department of Insurance. The objective of the proceeding was to obtain reimbursement for what the Legislature had declared in the Reform Act was "[the] mismanagement by the insurance companies acting as servicing carriers [that had] cost the association $908 million between its inception in 1984 and 1988." *N.J.S.A.* 17:33B–3a. The petitioners in that proceeding are the commissioner of insurance [4] and the New Jersey Automobile Full Insurance Underwriting Association. The respondents are fifteen insurance companies that served as servicing carriers for the Association. The first thirty counts of the complaint, devoting two counts to each of the fifteen carriers, allege that the fees which the servicing carriers received from the Association exceeded the "reasonable and adequate" compensation authorized by statute and that the carriers had violated their fiduciary duties to the Association and the public. Counts 31 through 72 allege that all but one of the servicing carriers failed to comply with applicable standards of underwriting performance, to detect underwriting errors, and to assess and collect the proper premiums. Counts 73 through 117 allege that the servicing carriers failed to provide proper claims services. As relief, the commissioner seeks restitution and further audits and examinations of the accounts of the servicing carriers. This administrative proceeding, which has been interrupted by court proceedings of various kinds on several occasions, is still pending before the commissioner.

The amendment to the Association's plan of operation which is the subject of this appeal was proposed by the commissioner and was adopted by its board of directors on April 19, 1990. It reads in part as follows:

1. Whenever the Association or the Commissioner determines that the Association has or may have sustained a financial loss due to any act or omission of any producer, member company or servicing carrier which violates any

---

[4]The petitioner, Jasper J. Jackson, was the acting Commissioner of Insurance. Mr. Samuel F. Fortunato became Commissioner on April 9, 1990.

statutory, contractual or plan of operation requirement, the Association or the Commissioner may institute a civil or administrative proceeding in order to obtain reimbursement or restitution of monies owed to the Association.

2. The Association shall pay all reasonable costs and expenses arising from the investigation, preparation or prosecution of *Jackson, et al. v. Aetna, et al.*, an administrative action filed with the Commissioner on February 20, 1990, and all related collateral litigation.

Following the appointment of an insolvency trustee for the Association, the trustee proposed a plan of operation in accordance with *N.J.S.A.* 17:33B–3b(2) for the stated purpose of ensuring the "prompt and orderly liquidation of the assets and affairs of the Association...." The trustee's plan was approved by the commissioner on March 20, 1991. Among other things, it ratified the April 19, 1990 plan amendment.

 The appellants object to the April 19, 1990 amendment because it

purports to give the Commissioner authority to adjudicate an administrative proceeding instituted by himself or the [Association] whenever he or the [Association] determines that the [Association] has or may have sustained a financial loss due to any statutory, contractual or plan of operation violation by any producer, member company or servicing carrier; and

requires the [Association] to pay the Commissioner's and the Attorney General's costs and expenses arising from the investigation, preparation or prosecution of the Administrative Action [Jackson vs. Aetna] and all related collateral litigation.

Appellants contend that the amendment is an "administrative rule" within the meaning of *N.J.S.A.* 52:14B–2(e) and is therefore void because its adoption did not comply with the provisions of the New Jersey Administrative Procedure Act, *N.J.S.A.* 52:14B–1 *et seq.* They also assert that the terms of the amendment are *ultra vires* and void because they are not authorized by any statute.

Concededly, the April 19, 1990 amendment to the plan of operation of the New Jersey Automobile Full Insurance Underwriting Association was not adopted in accordance with the Administrative Procedure Act. *See N.J.S.A.* 52:14B–4; 52:14B–4.1; 52:14B–5. However, the Association and the Attorney General argue that the amendment is not subject to the Admin-

istrative Procedure Act because the Association is not a State agency. *See N.J.S.A.* 52:14B–2(a). Alternatively, they contend, the adoption and ratification of the amendment was not the promulgation of a rule within the meaning of *N.J.S.A.* 52:14B–2(e) as interpreted by *Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 478 *A.*2d 742 (1984), and the cases which have followed it. The appellants respond that the adoption of the amendment was the action of a State Agency because of the participation of the commissioner of insurance. The commissioner submitted the text of the April 19, 1990 amendment for adoption by the Association's board of directors and he approved the trustee's plan of operation after the trustee had proposed it. Furthermore, appellants argue, the provisions of the plan amendment to which they object match all of the criteria of an agency rule as enunciated in *Metromedia.*

Our decision does not require us to determine whether or not the adoption of the April 19, 1990 amendment and its ratification by the March 20, 1991 trustee's plan of operation constitute the promulgation of a "rule" by a "State agency" within the meaning of *N.J.S.A.* 52:14B–2. The procedure utilized for the adoption of the April 19, 1990 amendment complied with *N.J.S.A.* 17:30E–6 of the New Jersey Automobile Full Insurance Availability Act; the procedure utilized for the adoption of the March 20, 1991 trustee's plan complied with *N.J.S.A.* 17:33B–3 of the Fair Automobile Insurance Reform Act of 1990. The Administrative Procedure Act does not have any greater authority than those two statutes. There is no contention, and no basis for a contention, that the procedure utilized for adoption of the plan amendment or for the trustee's plan failed to comply with the requirements of Constitutional due process. Therefore, even if we assume that the challenged provisions of the 1990 amendment are agency rules within the meaning of *N.J.S.A.* 52:14B–2, the validity of their adoption does not depend on compliance with that statute if the content of the amendment was appropriate for inclusion in the Association's and the trustee's plans. *Cf. In re Waste Disposal Agreement,*

237 *N.J.Super.* 516, 531, 568 *A.*2d 547 (App.Div.), *certif. denied,* 121 *N.J.* 647, 583 A.2d 337 (1990) (Promulgation of a statewide solid waste management plan that complied with the Solid Waste Management Act did not have to also comply with the Administrative Procedure Act.)

When the April 19, 1990 plan amendment was adopted, the most important remaining function of the Association was to marshall its assets and prepare for its liquidation. The provisions of the amendment directing the Association to initiate and fund a pending proceeding and, if necessary, other proceedings, in order to "obtain reimbursement or restitution of monies owed to the Association" legitimately served that purpose of the Association. Those provisions were therefore appropriately included in its plan of operation and therefore did not have to be promulgated in accordance with the Administrative Procedure Act. Whether the substantive content of those provisions of the amendment exceeds the power granted by the authorizing statutes is a separate question that we will also consider.

■ The provision of the plan amendment which purports to empower the commissioner to institute administrative proceedings to obtain reimbursement or restitution of monies owed to the Association is *not* a proper subject for inclusion in the plan of operation either of the Association or of its trustee. Those plans of operation are prescribed by statute as charters for the New Jersey Automobile Full Insurance Underwriting Association and for its insolvency trustee. They are not sources of authority for the commissioner of insurance. The plans cannot validly grant the commissioner powers for which there is no other statutory basis. If we assume that the provision of the plan amendment purporting to empower the commissioner to institute an administrative proceeding to obtain reimbursement or restitution of money owed to the Association is an administrative rule, the rule is invalid because it was not adopted in compliance with the Administrative Procedure Act. *See Metromedia, Inc. v. Director, Div. of Taxation,* 97 *N.J.* 313, 337,

478 *A.*2d 742 (1984); *Crema v. New Jersey Department of Environmental Protection*, 94 *N.J.* 286, 299, 463 *A.*2d 910 (1983); *St. Barnabas v. Rate Setting Com'n*, 250 *N.J.Super.* 132, 143, 593 *A.*2d 806 (App.Div.1991). However, if the invalid provision purports to grant the Commissioner a power which has been conferred on him by statute, the provision is surplusage. We turn therefore to the question whether there is adequate statutory authority for the commissioner or the Association to institute administrative proceedings against the servicing carriers to obtain reimbursement or restitution of money which they are alleged to owe to the Association.

■ *N.J.S.A.* 17:30E–17a reads:

a. The commissioner may suspend or revoke, after notice and a hearing, the certificate of authority of any member insurer ... who willfully fails to comply with the provisions of this act or the regulations or plan of operation promulgated thereunder. In addition to or in lieu of suspension or revocation, any member company violating the provisions of this act or the regulations or plan of operation promulgated thereunder may be fined by the commissioner.... These penalties shall be enforced and collected by the commissioner in the name of the State pursuant to "the penalty enforcement law" (N.J.S. 2A:58–1 et seq.)

The phrase, "after notice and a hearing," in the first sentence implicitly prescribes an administrative proceeding as a prerequisite for suspension or revocation. The second sentence authorizes the commissioner to fine a member company. Obviously, before a fine can be imposed, a hearing is necessary unless it is waived. By providing that "these penalties," *i.e.*, the fines, "shall be enforced and collected by the commissioner in the name of the State pursuant to 'the penalty enforcement law' (*N.J.S.* 2A:58–1 et seq.)," the third sentence quoted from the statute confirms that the hearing which must precede the fine is an administrative hearing; if the fine were to be imposed by a court, no separate judicial proceeding would be necessary to collect it. The immediately following statutory subsection, *N.J.S.A.* 17:30E–17b, empowers the Association's board of directors, after notice and an appropriate hearing, to prompt the commissioner to take any of the actions permitted by *N.J.S.A.* 17:30E–17a. The next subsection, *N.J.S.A.* 17:30E–17c, reads:

c. In the event the association sustains a financial loss due to any act or omission of any producer, member company or servicing carrier which violates any statutory, contractual or plan of operation requirement, the commissioner may, in addition or as an alternative to the penalties provided in subsections a. and b. of this section, order the restitution of any moneys owed to the association, and the reimbursement of reasonable costs of investigation and prosecution.

This subsection expressly authorizes the commissioner to "order ... restitution ... and reimbursement." Considered in the context of the entire section, *N.J.S.A.* 17:30E–17c implies that the notice and hearing which are prerequisite for any such order for restitution or reimbursement are the same kind of notice and administrative hearing before the commissioner as are required by subsections a and b. *N.J.S.A.* 17:30E–17 is therefore an entirely adequate basis for the commissioner's initiation of *Jackson v. Aetna* as an administrative proceeding.

In a letter submitted to us subsequent to oral argument of this appeal, counsel for the Association has informed us, "[T]he Association does *not* maintain that it, acting alone, may initiate proceedings directly before the commissioner of insurance or in the Office of Administrative Law." We accept this concession on behalf of the Association. The appellants do not appear to contend that the Association was not authorized to participate in the *Jackson v. Aetna* proceeding once it was initiated by the commissioner. In any event, there would be no justification for such a contention. Obviously, no prejudice has resulted from the fact that the Association joined the proceeding as a petitioner rather than as an intervenor.

Finally, we address the appellants' challenge to the funding provisions of the plan amendment that require the Association to pay all reasonable "fees, expenses, costs and salaries of attorneys, paralegals, secretaries, clerks or other assistants" and of "expert witnesses whether or not retained for litigation" which are "incurred by the Attorney General, Department of Insurance or the Association in the investigation, preparation or prosecution" of *Jackson v. Aetna* and of any "collateral" proceedings. Their attack on these provisions

is focused solely on the language itself and not on its application. Insofar as appears from the record presented to us, no demands have yet been made that the Association reimburse the commissioner for any specific costs of investigation or of prosecution, and appellants purport to reserve their right to challenge any such demands until the demands are asserted.[5] Their argument before us is solely that the funding provisions of the plan amendment are void on their face because they purport to obligate the Association to pay litigation costs which have not been imposed on it by *N.J.S.A.* 17:33B–10.

*N.J.S.A.* 17:33B–10 obligates the Association to pay "[a]ny costs, including attorneys' fees, incurred by the State in maintaining any action against servicing carriers ..., whether or not ultimately reimbursable as costs." Appellants argue that this statute is the sole authority for the funding provisions to which they object. We disagree. In the *Jackson v. Aetna* matter, the commissioner is seeking to compel the servicing carriers to restore funds to the Association; the proceeding is solely for the benefit of the Association. *N.J.S.A.* 17:30E–17c authorizes the commissioner to order "restitution of any moneys owed to the Association and the reimbursement of reasonable costs of investigation and prosecution." The reference to "reimbursement" of costs to the Association implies that the Association has the power, and perhaps the obligation, to fund the costs that will later be reimbursed. Furthermore, *N.J.S.A.* 17:30E–18.1 provides:

> The commissioner may, whenever he deems it necessary, make or cause to be made an examination of the finances, operations, methods of conducting business and all other affairs of the association, its management and its servicing carriers. For the purpose of the examination, the commissioner may authorize,

---

[5]Appellants state that their challenges to the plan amendment "are presently pending before the Commissioner and may be the subject of subsequent appeals." The court or administrative agency before whom the issue is raised will have to determine what effect the entire controversy doctrine may have. See R. 4:30A; *Sheeran v. Progressive Life Ins. Co.,* 182 *N.J.Super.* 237, 250–52, 440 *A.2d* 469 (App.Div.1981).

employ or otherwise engage such person, persons or other resources to conduct the examination, or to assist therein, as he deems advisable. *The reasonable expenses of the examination shall be determined by the commissioner and shall be paid by the association.* [Emphasis added.]

Read together and considered in the light of the Legislature's declarations, these three cited statutes impose a comprehensive obligation on the Association to fund the cost of investigating the servicing carriers' alleged misfeasance and of litigating to compel them to repay the resulting losses and overcharges. The funding language of the plan amendment to which appellants object is admittedly imprecise, but it surely does not, as appellants contend, limit the Association's authority or obligation to defraying statutory "costs" as defined by *N.J.S.A.* 22A:2–8. The language of the funding provisions of the plan amendment can fairly be read as imposing an obligation on the Association which is no greater than that authorized by the cited statutes. Whether the amounts which the commissioner may demand as reimbursement for expenses will comply with the statutes cannot be determined until the demands are made. On the basis of the present record, however, we hold that appellants have not sustained their burden of demonstrating that the funding provisions of the plan amendment are void on their face.[6]

The appellants' challenges to the April 19, 1990 amendment to the Association's plan and to the March 20, 1991 trustee's plan are rejected, and the commissioner's actions with respect to the plan amendment and the trustee's plan are affirmed.

---

[6]As an additional ground for sustaining these provisions of the amendment, the Attorney General argues that the Association has the power to take any action necessary to effectuate its statutory purposes and that defraying the expenses of administrative and judicial proceedings intended to result in its recovery of overcharges serves those purposes. The appellants respond that an independent purpose cannot reasonably be attributed to the Association because the commissioner of insurance has the power to compel it to act. The ground on which we have disposed of appellants' challenge to the funding provisions of the plan amendment make it unnecessary for us to decide this issue.