237 N.J. Super. 516 (1990)
568 A.2d 547
IN RE LONG-TERM OUT-OF-STATE WASTE DISPOSAL AGREEMENT BETWEEN THE COUNTY OF HUNTERDON AND GLENDON ENERGY COMPANY OF GLENDON, PENNSYLVANIA.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1989.
Decided January 8, 1990.
*518 Before Judges KING, BAIME and KEEFE.
Gaetano M. DeSapio argued the cause for appellant County of Hunterdon (John P. Gallina on the brief and Gaetano M. DeSapio and John P. Gallina on the reply brief).
Paul H. Schneider, Deputy Attorney General, argued the cause for respondent State of New Jersey (Peter N. Perretti, Jr., Attorney General of the State of New Jersey, attorney; Michael R. Clancy, Assistant Attorney General, of counsel; Paul H. Schneider on the brief).
The opinion of the court was delivered by KING, P.J.A.D.
This appeal challenges the Department of Environmental Protection's (DEP) disapproval of a long-term (20-year) contract between Hunterdon County and Glendon Energy Company. The contract called for Glendon to provide for disposal of solid waste generated in Hunterdon County for the 20-year period beginning June 1, 1991. The waste was to be disposed of at a resource recovery incinerator which Glendon proposed to build in Northhampton County in the Commonwealth of Pennsylvania. We reject the County's challenge to the DEP's administrative action and affirm.
*519 By letter of November 8, 1988, DEP disapproved the contract. After communications concerning the finality of DEP's decision and the denial of the County's request for an administrative hearing, this appeal ensued. The County asserts five points challenging DEP's refusal to approve this long-term, out-of-state contract for solid waste disposal: (1) DEP's administrative action was illegal, unreasonable, arbitrary and capricious; (2) the disapproval violated the Commerce Clause of the federal Constitution; (3) the DEP erred in refusing to grant an administrative hearing; (4) the decision constituted administrative rule-making not in compliance with the Administrative Procedure Act, N.J.S.A. 52:14B-1 to -14; and (5) the conditions for DEP approval of an in-county back-up facility were unreasonable.
In 1975 the Legislature amended the Solid Waste Management Act (Act) to establish a solid waste planning process which provides "a statutory framework within which all solid waste collection, disposal and utilization activity in this State" can be controlled. N.J.S.A. 13:1E-2b(1); L. 1975, c. 326. The Legislature expressed particular concern that solid waste disposal activities had been carried out in a random fashion "with little, if any, regard for regional planning and coordination." N.J.S.A. 13:1E-2a. It sought to regulate such activity by means of a comprehensive state and regional planning program.
To accomplish this goal, each of 22 planning districts (the 21 counties and the Hackensack Meadowlands) was required to develop and formulate a ten-year plan which identified that district's waste disposal needs and proposed solutions to meet those needs. N.J.S.A. 13:1E-19, 20, 21 and 23. In particular, each solid waste management plan must include:
A site plan, which shall include all existing solid waste facilities located within the solid waste management district, ... and sufficient additional available suitable sites to provide solid waste facilities to treat and dispose of the actual and projected amounts of solid waste [generated in the district]. [N.J.S.A. 13:1E-21b(3)].
*520 The Act recognizes that a district may lack sufficient suitable internal sites to provide the necessary solid waste disposal facilities. In that event, the Act provides:
Upon a certification to the commissioner [of DEP] by the board of chosen freeholders ... of the absence of sufficient existing or available suitable sites for such solid waste facilities within the solid waste management district, the site plan shall identify sufficient additional existing or available suitable sites for such facilities located in another solid waste management district. [N.J.S.A. 13:1E-21b(3)].
The district must then submit an interdistrict agreement with the board of freeholders of the county in which the solid waste facilities are to be located. Ibid.
In order to provide for coordination of the various district solid waste management plans, the Act calls for DEP to "[d]evelop, formulate, promulgate and review for the purpose of revising or updating not less than once every 2 years, a Statewide solid waste management plan." N.J.S.A. 13:1E-6a(3). This Statewide plan is to include the "objectives, criteria and standards for the evaluation" of the various district plans. Ibid. Concomitantly with the authority to promulgate a Statewide solid waste management plan, DEP is directed to "study and review" each district's solid waste management plan "according to the objectives, criteria and standards developed in the Statewide solid waste management plan," N.J.S.A. 13:1E-24a(1), to "approve, modify or reject" each district plan, and to direct affected districts to adopt modifications and replacements where the commissioner considers such actions to be appropriate. N.J.S.A. 13:1E-24b.
To assure that the Statewide solid waste management plan and the various districts' solid waste management plans serve as "comprehensive" blueprints which address the waste disposal needs of every municipality within the State, N.J.S.A. 13:1E-2b(2), A.A. Mastrangelo, Inc. v. DEP, 90 N.J. 666, 679 (1982), the Act includes various provisions to assure that solid waste disposal activities conform to the plans. In reviewing applications for permits for new solid waste collection operations and for new solid waste disposal facilities, DEP "shall not approve *521 the registration of any new operation or facility that does not conform to the solid waste management plan of the solid waste management district in which such operation or facility is to be located." N.J.S.A. 13:1E-4b. While the Act provides for State grants for experimental solid waste collection, disposal and utilization projects, no such grant may be made unless the Commissioner finds that the proposed project "is consistent with the adopted and approved solid waste management plan of the solid waste management district within which the project is to be undertaken and is in conformity with the objectives, criteria and standards contained in the Statewide solid waste management plan." N.J.S.A. 13:1E-31a.
By the 1975 amendments the Legislature sought also to ensure that all contracts relating to solid waste activities conform to the applicable solid waste plans. N.J.S.A. 13:1E-29b provides that
no renewal of any ... contract ... and no new contract for solid waste collection or solid waste disposal, shall be entered into after the effective date of this act, unless such renewal or such new contract shall conform with the applicable provisions of the approved solid waste management plan of the relevant solid waste management district or unless such contract is approved by the commissioner.
When the Legislature amended the Local Public Contracts Law in 1985 to allow, subject to certain approvals, long-term contracts for resource recovery services, it expressly provided that these contracts must be approved by DEP and other State agencies, and that these contracts must conform to applicable solid waste management plans. N.J.S.A. 40A:11-15(17); L. 1985, c. 38.
Pursuant to this solid waste planning scheme, Hunterdon County in 1979 adopted its initial solid waste management plan. Once the County had adopted modifications to the plan required by DEP, then-DEP Commissioner English on October 2, 1981 issued a certification of approval with modification of the Hunterdon County district solid waste management plan. The plan as approved provided for disposal of Hunterdon County waste in an existing landfill and contemplated the construction *522 of a new resource recovery facility in Warren County which would, once operational, process Hunterdon County waste in accordance with an interdistrict agreement between the two counties.
On September 12, 1983 DEP closed the landfill in Warren County, to which some of Hunterdon's waste was taken, for health and safety reasons. Thus, the Hunterdon-Warren County waste disposal agreement failed. Although Hunterdon and Warren counties later agreed on a plan for disposal of some Hunterdon County waste at the recently opened Warren County resource recovery facility, Hunterdon found it necessary to pursue alternative waste disposal arrangements. Therefore the County constructed a transfer station to which all wastes in the County were directed. That waste which was not disposed of in Warren County was transferred to the transfer station to be disposed of out-of-state. Hunterdon County also adopted other amendments to its solid waste management plan not directly relevant to this appeal.
Pursuant to N.J.S.A. 13:1E-24, DEP reviewed the entire Hunterdon County district solid waste management plan to determine whether the plan fulfilled the requirements of the Act. DEP found the Hunterdon County plan deficient. Then-Commissioner Hughey's certification of the August 28, 1984 amendment stated:

N.J.A.C. 13:1E-21b(3) requires a site plan which shall include all existing solid waste disposal facilities located within the Solid Waste Management District ... and sufficient additional available suitable sites to provide solid waste facilities to treat and dispose of the actual and projected amounts of solid waste contained in the report accompanying the plan.
With the exception of sole-source landfills, Hunterdon County has no operating solid waste disposal facilities. Furthermore, no sites for a landfill or resource recovery facility have been selected. Since most of the waste generated in Hunterdon County is now disposed of at out-of-state facilities, the Department considers this arrangement to be tenuous and unacceptable. Therefore, I find this section of the Hunterdon County Solid Waste Management Plan to be deficient. [Certification at 3.]
Commissioner Hughey ordered the County to remedy this deficiency.
*523 In 1985, DEP developed a Statewide solid waste management plan update pursuant to N.J.S.A. 13:1E-6a(3). Among other things, this statewide plan addressed provisions of the Solid Waste Management Act calling for the various solid waste management districts within New Jersey to designate suitable sites within each district to meet the district's waste disposal needs. The statewide plan provided:
Historically, the State of New Jersey has been the recipient of large quantities of solid waste from other states, principally New York and Pennsylvania. However, the past few years have seen a reversal of this trend, as landfill capacity in New Jersey has become more scarce and more costly. That same scarcity of in-state capacity has forced a number of New Jersey districts, which have not secured interdistrict agreements for the use of in-state facilities or developed their own disposal capacity, to rely upon out-of-state landfills.
The Department considers the use of out-of-state disposal facilities to be inappropriate as a long-range solid waste management option. Out-of-state facilities are subject to control by a range of state, regional, and local agencies about which New Jersey has little information regarding policies and plans and over which the state has little influence and no regulatory control. There is considerable uncertainty regarding reliance by those districts upon the capacity at those out-of-state disposal facilities for short, medium, or long-term use. Likewise, it is not possible to predict the decisions of regulatory/permitting agencies, or the development of new regulations or statutes which may preclude continued use of specific facilities.
The uncertainty inherent in use of out-of-state facilities conflicts with the philosophy of the Solid Waste Management Act, which is that districts should be able to plan for and predict the availability of disposal capacity to meet their needs.
The Department has allowed several districts to rely upon out-of-state facilities, as a short term option, in cases where districts have not been able to secure interdistrict agreements for access to in-state capacity. However, it is critical that districts which do rely on out-of-state disposal capacity, secure enforceable assurances from those facilities in order to ensure continued use until in-state facilities can be brought on line. It is equally critical that those districts develop an in-state solution as quickly as practicable.[1]
*524 DEP proposed this Statewide solid waste management plan on July 11, 1985 and published notice of the proposal, public hearings, and the opportunity for written comment in the New Jersey Register. 17 N.J.R. 1797(a) (July 15, 1985). Following public hearings, then-Commissioner Dewling adopted the Statewide plan and published notice of it in the New Jersey Register. 18 N.J.R. 1493(d) (July 21, 1986).
The present dispute over Hunterdon's proposed 20-year contract with Glendon arose against this background. DEP has encouraged the County to develop a landfill or resource-recovery facility sufficient to meet its waste disposal needs. Hunterdon has never certified, pursuant to N.J.S.A. 13:1E-21b(3), an absence of suitable sites for development of solid waste facilities in the County or an inability to reach an interdistrict agreement with another county. Instead, Hunterdon proposed to enter into a 20-year contract with Glendon for disposal at a contemplated facility in Pennsylvania. The contract was procured under the competitive bidding process of the Local Public Contracts Law. N.J.S.A. 40A:11-1 to -40. The County advertised twice without success; then it began negotiations to award a contract per N.J.S.A. 40A:11-5(3).
The contract is for a 20-year term starting June 1, 1991. As far as this record discloses, construction either has not been started or is pending completion. State and local approvals are still pending, although Glendon believes it can meet all requirements to obtain the necessary permits. Should it fail to get them, Glendon can terminate the agreement upon payment to the County of $500,000. The contract is expressly conditioned on DEP approval.
On April 22, 1987, Hunterdon County Counsel Gaetano M. DeSapio wrote to then-DEP Commissioner Dewling advising him of the County's intent to enter into the Glendon contract. Commissioner Dewling replied by letter dated May 7, 1987. Consistent with the Statewide solid waste management plan, *525 Commissioner Dewling advised Hunterdon County to develop in-county waste disposal facilities and suggested that reliance upon out-of-state facilities was not feasible for the long-term, i.e., more than five years.
Representatives of the DEP and the County then met on July 16, 1987. Review of correspondence exchanged since that time reveals that the parties had different understandings of what took place at that meeting. By letter of October 14, 1987, DEP memorialized the position it had articulated at the July meeting: it had agreed to consider approval of a long-term out-of-state disposal contract, subject to various conditions designed to assure conformance with the Statewide solid waste plan.
First, DEP noted that such a contract would require an amendment to the County's solid waste management plan which, pursuant to N.J.S.A. 13:1E-24b, would require DEP approval. DEP stated that it could not prejudge such an amendment until it had followed the review procedures mandated by the Act. Second, DEP said that it would consider approving the contract if the proposed facility first obtained all necessary governmental approvals from the jurisdiction in which it was located. Third, in order to provide for undesirable contingencies and assure that the County's ability to provide continuous, uninterrupted waste disposal was not dependent upon authorities in other jurisdictions, DEP approval would be conditioned on an agreement by the County to site, purchase and secure all necessary permits, and possibly to construct an in-County landfill. Indeed, in a letter brief of September 26, 1989, which we invited at oral argument on the Commerce Clause question, DEP through the Attorney General's office, advised us that "it remains the position of DEP that an appropriate contract for the long-term out-of-state disposal of waste is approvable provided that the County makes adequate provision for in-state backup capacity." The DEP letter of October 14, 1987 discussed other conditions as well. After October 14, *526 the meetings and letter writing campaign continued but the parties remained in fundamental disagreement pending this appeal hearing.
On June 21, 1988 the County submitted the proposed contract with the Glendon Energy Company to DEP for review. By letter dated September 9, 1988 from Assistant Commissioner Deieso, DEP disapproved the proposed contract, observing the County's failure to proceed with development of in-county disposal facilities. On October 5, 1988 the County inquired whether the September 9, 1988 letter was a final decision appealable to the Appellate Division and requested an administrative hearing pursuant to N.J.S.A. 52:14B-9. On November 14, 1988 DEP stated that it deemed its decision final and declined to grant an administrative hearing.
Appellant County now stresses the alleged inconsistency and vacillation of the DEP over the years with respect to this situation. There is much to be said for the County's position in this regard. Notwithstanding, we must adjudicate the merits of the DEP's decision on the basis of its legal authority to approve or disapprove the County's proposal not on niceties or consistency of DEP's approach to the problem or the matter's tortuous administrative course over the past decade and through the terms of several commissioners.

I
We conclude that the decision of the Commissioner of the DEP to disapprove the long-term contract between Hunterdon County and Glendon was in compliance with legislative policies and had a reasonable basis in the record. Judicial authority to review administrative action is limited. Gloucester County Welfare Bd. v. N.J. Civil Service Comm'n, 93 N.J. 384, 390 (1983). See Public Service Electric and Gas Co. v. DEP, 101 N.J. 95, 103 (1985); Henry v. Rahway State Prison, 81 N.J. *527 571, 579-80 (1980); Campbell v. Dept. of Civil Service, 39 N.J. 556, 562 (1963).
DEP has authority to promulgate a Statewide solid waste management plan. N.J.S.A. 13:1E-6a(3). The Hunterdon County Board of Chosen Freeholders has authority to adopt a solid waste management plan and updates and amendments thereto. N.J.S.A. 13:1E-20, -21b(3), -23. DEP has statutory authority to review any solid waste management plan adopted by Hunterdon County according to the objectives, criteria and standards set forth in the Statewide solid waste management plan. N.J.S.A. 13:1E-24a. Upon completing this review, the Commissioner has authority to approve, modify, or reject any such solid waste management plan. N.J.S.A. 13:1E-24b.
Hunterdon County may not enter into any contract concerning solid waste collection or solid waste disposal unless that contract is consistent with the Hunterdon County solid waste management plan as approved by DEP or is otherwise approved by the Commissioner. Pursuant to N.J.S.A. 13:1E-29b, this restriction is applicable to "any such contract" entered into since the 1975 amendments to the Act became effective. N.J.S.A. 13:1E-29b; L. 1975, c. 1. 326, § 20. In addition, when the Legislature amended the Local Public Contracts Law in 1985 to authorize, under certain circumstances, long-term contracts for resource recovery services, it repeated the requirement that any such contract must receive DEP approval and must be "in conformance with the solid waste management plan." N.J.S.A. 40A:11-15(17); L. 1985, c. 38, § 37.
N.J.S.A. 40A:11-15(3), which generally limited the duration of contracts concerning waste disposal to a term not exceeding five years, was enacted by L. 1971, c. 198, § 15, prior to promulgation of the 1975 amendments to the Solid Waste Management Act establishing the existing solid waste planning process. See ante at 2 to 5. All contracts for waste disposal services, regardless of their temporal term, are now subject to the *528 provisions of N.J.S.A. 13:1E-29b, which requires that all contracts concerning solid waste collection and disposal conform with applicable solid waste management plans as approved by DEP or be otherwise approved by DEP.
We conclude that the decision by DEP to avoid dependence on out-of-state solid waste in the long run has a rational basis and was within DEP's statutory authority. This appeal is, at least in part, a challenge to the Executive Branch's decision on how to implement the Statewide solid waste management plan. That decision calls for local and state governments to solve the waste disposal problem through the development of in-state waste disposal facilities.[2] This Statewide management plan, adopted in June 1986, specifically rejects the concept of "out-of-state disposal" alternatives. As noted in a draft of the plan dated July 15, 1985:
The uncertainty inherent in use of out-of-state facilities conflicts with the philosophy of the Solid Waste Management Act, which is that districts should be able to plan for and predict the availability of disposal capacity to meet their needs.
The Department has allowed several districts to rely upon out-of-state facilities, as a short term option, in cases where districts have not been able to secure interdistrict agreements for access to in-state capacity. However, it is critical that districts which do rely on out-of-state disposal capacity, secure enforceable assurances from those facilities in order to ensure continued access until in-state facilities can be brought on line. It is equally critical that those districts develop an in-state solution as quickly as practicable.
We cannot find here that DEP acted without statutory authority or, alternatively, exercised that authority arbitrarily and capriciously or in a manner unreasonable or inappropriate to *529 the effectuation of that specific delegation of authority, D.S. v. East Brunswick Tp. Bd. of Ed., 188 N.J. Super. 592, 597 (App.Div.), certif. den. 94 N.J. 529 (1983); see N.J. Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 562 (1978). The policy decision to require certain and reliable in-state alternative sites where long-term out-of-state disposal is contemplated by a district is a decision to be made by the politically responsible branches of State government, not by the judiciary. See Jersey City v. DEP, 227 N.J. Super. 5, 17-18 (App.Div.), certif. den. 111 N.J. 640 (1988) (policy choices embraced within statutory grant of authority are for Executive branch). We determine only the legality of the decision; the wisdom of the decision is left to the political branches.

II
We will assume that the County has standing to raise the Commerce Clause argument under the United States Constitution, Art. I, § 8, cl. 3, although we are by no means certain that a political subdivision of this State enjoys such standing in this context. See Star-Kist Foods v. County of Los Angeles, 42 Cal.3d 1, 227 Cal. Rptr. 391, 719 P.2d 987 (1986), cert. den. 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 758 (1987) (county and municipality had standing to challenge California state tax exemption). However, we find no Commerce Clause violation. In Trenton v. New Jersey, 262 U.S. 182, 187, 43 S.Ct. 534, 536, 67 L.Ed. 937 (1923), the Supreme Court held that when dealing with its political subdivisions, a state is "unrestrained by any provisions of the Constitution of the United States." See Camden County v. Pennsauken Sewerage Authority, 15 N.J. 456, 469-470 (1954); see also Bergen County v. Port of New York Authority, 32 N.J. 303, 313 (1960).
The states have retained significant power to regulate in the areas of environmental protection and resource conservation. Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 101 *530 S.Ct. 715, 66 L.Ed.2d 659 (1981); Philadelphia v. New Jersey, 437 U.S. 617, 623-624, 98 S.Ct. 2531, 2535-2536, 57 L.Ed.2d 475 (1978). This is not a case of economic protectionism or patent economic discrimination. The policy of DEP effectuates legitimate local interests usually subsumed by the police powers and invoked to insure health and safety. The thrust of New Jersey's policy is to protect our environment over the long term by insuring the existence of an essential public service, solid waste disposal, when the critical time and need arrives. Indeed, New Jersey's policy against reliance on out-of-state disposal actually burdens its own citizens currently for their ultimate good; it does not burden citizens of other states in any way; nor does it prevent New Jersey's treatment of out-of-state waste and thus discriminate against others; nor is the ban on the County's out-of-state disposal here absolute. Short-term, out-of-state disposal still may continue to take place under the Statewide plan, see ante at 523, and could continue for Hunterdon County if that district has an adequate in-state back-up facility.
Reasonable local regulation of solid waste disposal recently has been upheld in the face of Commerce Clause claims where the failure of state government to act could result in a crisis. See Glassboro v. Gloucester County, 100 N.J. 134 (1985), cert. den. 444 U.S. 1008, 106 S.Ct. 532, 88 L.Ed.2d 464 (1985), aff'g 199 N.J. Super. 91 (App.Div. 1985). Elizabeth v. DEP, 198 N.J. Super. 41, 50 (App.Div. 1984); Evergreen Waste Systems, Inc. v. Metropolitan Service Dist., 820 F.2d 1482 (9th Cir.1987); Hybud Equipment Corp. v. Akron, 654 F.2d 1187, 1194 (6th Cir.1981), remanded on other grounds, 455 U.S. 931, 102 S.Ct. 1416, 71 L.Ed.2d 640 (1982); Waste Aid Systems, Inc. v. Citrus County, 613 F. Supp. 102, 105 (N.D.Fla. 1985); Harvey and Harvey v. Delaware Solid Waste Authority, 600 F. Supp. 1369, 1379 (D.Del. 1985); Shayne Brothers, Inc. v. District of Columbia, 592 F. Supp. 1128, 1131 (D.D.C. 1984). These sound authorities all recognize the difference between economic protectionism *531 and solid waste regulation under the police power of local and state governments. None ascribes to the thesis that a local governmental unit is constitutionally entitled to the least expensive interim solution to this pervasive waste disposal problem under the guise of Commerce Clause protection. Where Congress has not acted, a State's own health and safety-oriented trash disposal regulation violates no federal constitutional precepts, provided it neither unduly protects its own citizens nor discriminates against another state's citizens.
We also conclude that the County had no right to an adjudicatory hearing in this circumstance. There was no entitlement by constitutional right or statute, nor do any particularized property rights or other special interests command the right to such a hearing. See Cunningham v. Department of Civil Service, 69 N.J. 13, 22-24 (1975). DEP has throughout been amenable to reviewing any materials submitted by the County. Moreover, courts in this State consistently hold that a local governmental entity objecting to a state agency's action generally does not have the kind of particularized interest that would entitle it to a hearing. See High Horizons Development Co. v. Dept. of Transportation, 231 N.J. Super. 399, 406 (App. Div. 1989); Cedar Grove v. Sheridan, 209 N.J. Super. 267, 274-275 (App.Div.), certif. den. 104 N.J. 464 (1986); In Re Application of North Jersey District Water Supply Comm'n., 175 N.J. Super. 167, 202-204 (App.Div.), certif. den. 85 N.J. 460 (1980).
We conclude that the County's final two points are clearly without merit. R. 2:11-3(e)(1)(D). The Statewide plan was promulgated pursuant to the Solid Waste Management Act; the Administrative Procedure Act is inapplicable. In any event, the challenge on this ground is time-barred by N.J.S.A. 52:14B-4(d), as it was not made within one year of July 21, 1986. See 18 N.J.R. 14939(e). The final point requesting remand is without *532 merit as DEP's conditions for approval of an in-county back-up facility are reasonable, as noted.
Affirmed.
NOTES
[1] Although not directly germane to the issues on this appeal, the fragility of reliance on out-of-state disposal sources for the long-term was demonstrated by the issuance of an Executive Order by Pennsylvania's Governor Casey on October 17, 1989, about a month after oral argument in this case. This Order substantially restricts the disposal in the Commonwealth of waste generated outside of Pennsylvania. Evid.R. 9(1) and (2). (Footnote added.)
[2] Subsequent to September 9, 1988, when DEP rendered the decision under appeal in the instant case, the County submitted to DEP for review a proposed amendment to the Hunterdon County solid waste management plan which includes the long-term contract with Glendon Energy Company. By certification dated April 20, 1989, DEP Commissioner Christopher J. Daggett rejected this amendment to the Hunterdon County solid waste management plan pursuant to N.J.S.A. 13:1E-24d. There is no appeal from that particular rejection before us.