

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-14-1995

# Chambers Dev Co v Passaic Cty

Precedential or Non-Precedential:

Docket 94-3475

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Chambers Dev Co v Passaic Cty" (1995). *1995 Decisions.* Paper 218.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/218

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

_____

NO. 94-3475
_____

CHAMBERS DEVELOPMENT COMPANY, INC.;
CONEMAUGH TOWNSHIP, SOMERSET COUNTY,
COMMONWEALTH OF PENNSYLVANIA

v.

PASSAIC COUNTY UTILITIES AUTHORITY

Chambers Development Company, Inc.,
Appellant

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. No. 92-cv-00509J
_____

Argued June 15, 1995
Before:  STAPLETON, McKEE, and ROSENN, Circuit Judges
( Opinion Filed August 14, 1995)
_____

MICHAEL R. COLE, ESQUIRE (Argued)
Riker, Danzig, Scherer, Hyland & Perretti
One Speedwell Avenue
Headquarters Plaza
Morristown, NJ   07962-1981
  Counsel for Appellant

JONATHAN L. WILLIAMS, ESQUIRE (Argued)
DeCotiis, Fitzpatrick & Gluck
401 Hackensack Avenue
Hackensack, NJ   07601
  Counsel for Appellee

_____

OPINION OF THE COURT


ROSENN, Circuit Judge.

This appeal raises an issue of contract interpretation which has important consequences to the parties and the citizens of Passaic County, New Jersey. The Passaic County Utilities Authority (PCUA or the Authority) finds itself confronted with two written contracts it executed with different parties for the disposal of solid waste during substantially the same period of time. Finding the later contract more attractive, PCUA claims the earlier contract is unenforceable because the New Jersey Department of Environmental Protection and Energy (DEP) did not grant the required approval.

Chambers Development Company, Inc. (Chambers), a Pennsylvania corporation, entered into two interrelated contracts[0] in 1987 with PCUA for Passaic County's waste disposal over a fifteen year period. On August 5, 1992, the Authority signed a Memorandum of Understanding (MOU) with Empire Sanitary Fill, Inc. (Empire), another Pennsylvania corporation, for the disposal of Passaic County's solid waste for the next fifteen years. This prompted Chambers to bring this diversity action in the United States District Court for the Western District of Pennsylvania seeking an injunction enjoining the Authority, inter alia, from entering into a waste disposal agreement with Empire in abrogation of its waste disposal contract with Chambers.

In November 1992, the district court granted Chambers a permanent injunction, requiring the Authority, unless directed to

---

[0] The parties frequently refer to these contracts as a two-part contract. The contracts provide that they are to be interpreted in accordance with the law of New Jersey.

2

the contrary by DEP, to continue operating under the terms and conditions of its contract with Chambers for waste disposal. The injunctive order, however, further provided that it should not be construed to restrict any of the parties in proceeding before DEP to seek approval or disapproval "of any primary long-term plan for the disposal of municipal solid waste by the PCUA." In December 1993, the Authority submitted the Empire MOU to DEP for approval.[0] Ultimately, after a lapse of nine months, DEP approved Empire as the primary disposal agent for PCUA.

On January 25, 1993, Chambers filed a motion for summary judgment asserting that the Authority had breached its contract with Chambers by approving the MOU with Empire and sought damages. The Authority opposed the motion. The parties and the court then plunged into a procedural miasma which is virtually impenetrable. After Chambers filed its summary judgment motion, the district court referred the matter to a magistrate judge who issued a report recommending that the district court grant summary judgment to the Authority "on plaintiff Chambers' motion for summary judgment," although the Authority never moved for summary judgment.

On June 29, 1994, the district court issued an order denying Chambers' motion for summary judgment, entering judgment on Chambers' claim for damages in favor of the Authority and

_____

[0]The Authority petitioned DEP specifically for approval of the Empire contract. However, it did not do so with the earlier Chambers contract. As to it, the Authority sought to have DEP approve Passaic County's Amended Solid Waste Disposal Plan so as to permit it to implement the Chambers contract.

adopting the magistrate judge's Report and Recommendation as the opinion of the court. The court then directed the parties to regard this order as a "final decision." Neither the magistrate judge nor the district court notified Chambers that they were considering granting summary judgment against Chambers or afforded Chambers an opportunity to present pertinent evidence in opposition to summary judgment.

On July 13, 1994, Chambers moved, pursuant to Fed. R. Civ. P. 59, to amend the district court's June 29, 1994 judgment to direct a hearing to determine whether PCUA breached its duty of good faith performance for its contract with Chambers. The court denied the motion. Chambers appealed to this court from the order of the district court denying its motion to amend the judgment. We vacate and remand.

I.

The waste disposal contracts executed between Chambers and PCUA in 1987 consisted of a short-term agreement and a long-term agreement. The short-term agreement covered the period 1987 to 1992, while the long-term agreement stretched from 1992 to 2002. Although we see no such provision in the agreements, and we are referred to none, it is undisputed that DEP had to approve the amendment to the Passaic County District Solid Waste Management Plan designating Chambers as the primary landfill system for Passaic County's waste disposal before the contract between Chambers and the Authority became enforceable. N.J.S.A. 13:1E1-29b. The Authority and Chambers performed the short-term

4

contract without incident. The long-term agreement, however, is at issue in these proceedings.

Several months prior to the December 1, 1992 starting date of the long-term agreement, the Authority began negotiating with Empire for the disposal of Passaic County waste. These negotiations resulted in Empire and the Authority signing the Memorandum of Understanding on August 5, 1992 providing that Empire would dispose of Passaic County waste for the next fifteen years. Chambers' injunctive action followed.

On appeal, Chambers and the Authority both treat the district court's order denying Chambers' motion for summary judgment as one granting summary judgment to the Authority on the breach of contract issue. However, the district court did not grant summary judgment to the Authority on the contract issue, although it did enter judgment for the Authority on the question of damages.[0] The magistrate judge's opinion, adopted by the district court, does not address every aspect of Chambers' motion. The district court essentially entered summary judgment on the claim for damages to a non-moving party without addressing all of the issues raised by Chambers. We will not review an order denying a motion for summary judgment. See, e.g., Hart v. Overseas Nat. Airways, Inc., 541 F.2d 386, 394 (3d Cir. 1976).

---

[0]The district court order states that Chambers' "motion for summary judgment is denied, and judgment on [Chambers'] claim for damages is entered in favor of the [Authority]."

5

However, we will review the court's order entering judgment for the Authority on the issue of damages because it is "final."[0]

## II.

The district court provides no explanation or justification for entering judgment for the Authority on the damages question. Presumably, the court concluded as a matter of law that the Authority had not breached its contract with Chambers and therefore Chambers was not entitled to any damages. This constitute both procedural[0] and substantive error.

A party must perform a legal contract unless that performance is excused for a valid reason; failure to perform is a breach. 11 Williston on Contracts § 1290 (3d ed. 1968). The contract between Chambers and the Authority was a valid contract when signed in 1987. However, both parties agree that the contract was subject to approval by DEP of Passaic County's amended solid waste plan. DEP did not approve Passaic's

---

[0]The district court possessed subject matter jurisdiction pursuant to 28 U.S.C. section 1332. This court has appellate jurisdiction over the district court's final order under 28 U.S.C. section 1291.

[0]Although authority has developed to allow a court to grant summary judgment to a non-moving party, see American Flint Glass Workers Union v. Beaumont Glass Co., No. 94-3307 ((3d Cir. 1995); Viger v. Commercial Ins. Co., 707 F.2d 769 (3d Cir. 1983), a judgment cannot be entered without first placing the adversarial party on notice that the court is considering a sua sponte summary judgment motion. The court must also provide the party with an opportunity to present relevant evidence in opposition to that motion. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986); Lutz v. York, 899 F.2d 255, 258 n.5 (3d Cir. 1990). The court did neither in this case. Moreover, the Authority never attempted to show that it merited summary judgment because it was opposing Chambers' motion, not supporting a motion of its own. Additionally, there are numerous issues of fact which preclude a grant of summary judgment here. See text infra.

amendment for its long-term waste disposal designating Chambers' landfill system for the 1992-2002 period. Rather, it approved the designation of Chambers as a component of Passaic County's contingency waste disposal plan.[0]

Chambers first contends that DEP's contingent approval of the plan made them the exclusive out-of-state disposal facility for Passaic County waste, subject only to the development of in-state alternatives. It points to the following passages from the various DEP approval memoranda to support its argument.

> The New Jersey Advisory Council on Solid Waste Management commented that although Passaic County has secured disposal space, the county remains wholly dependant on out-of-state disposal. [DEP] specifically addresses this comment by approving the interim arrangements for out-of state disposal and authorizing modified approval of the longer term arrangement as an integral component of Passaic County's solid waste contingency plan. June 24, 1987 Certification.
>
> However, [DEP] is unable to approve the [Chambers] arrangement as the primary landfilling system for the disposal of [waste]. N.J.S.A. 13:1E-21(b)3 places a legal obligation on each district to plan for sufficient available suitable in-county disposal sites. . . . the division maintains that the only solution to the long-term disposal needs of Passaic County is the development of in-county facilities or to secure interdistrict agreement with other New Jersey counties. In light of these factors, and the extent that Passaic County has failed

---

[0]DEP stated that: "In place of approving the primary long-term use of the [Chambers] arrangement, [DEP] has modified the amendment to reflect approval of the long-term use of these facilities as a component of Passaic County's Contingency Plan."

to meet its planning obligations pursuant to N.J.S.A. 13:1E-21(b)3, [DEP] cannot approve primary dependance upon out-of-state residual disposal capacity for the period 1993 to 2002. June 24, 1987 Certification.

[W]ithin forty-five days of the date of this certification, Passaic County is directed to submit the remainder of its solid waste contingency plan in plan amendment form for state level review . . . . More specifically, the remainder of the plan should address in-county residual landfill development, the development of interdistrict agreements on an interim/emergency basis, and the identification of alternate landfilling options. June 24, 1987 Certification.

Chambers also refers to the following DEP memoranda:

As such, Passaic County currently has no disposal plan in place and the long-term use of out-of-state disposal was authorized only within the context of contingency plan backup use as stated within [DEP's] September 1, 1987 certification. April 1, 1992 Certification.

The Continued failure on the part of the County to enter into a regional in-state disposal agreement or to identify and develop in-county capacity is a serious plan deficiency. . . . April 1, 1992 Certification.


Conversely, the Authority maintains that DEP's contingent approval of the plan amendment permitted it to replace Chambers with any waste disposal alternatives. In support, it also cites the following DEP memoranda:

[T]he remainder of the plan should address in-county residual landfill development, the development of interdistrict agreements on an interim/emergency basis, and the

8

identification of alternate landfilling options. June 24, 1987 Certification.[0]

The remaining Long Term Agreement was merely a contingent arrangement which, for [DEP] purposes, never took effect. October 7, 1993 Certification.

[DEP] has consistently maintained the position that the second phase of the Chambers Agreement was approved for contingency purposes only, . . . . Judge Smith recognized the ability of [DEP] to abrogate a portion of the Chambers agreement, should more acceptable alternatives be presented, although noting that at the time the Memorandum Order was issued, [DEP] had not yet taken any action to supplant the contingent portion of the Chambers agreement. . . . [DEP] is now taking that step by approving, in modified form, an agreement which better suits the needs of the public and the goals of [DEP]. October 7, 1993 Certification.

These extensive quotations provide support for both parties' contentions regarding the scope of DEP's contingent plan approval, but they do not resolve the issue before the court pertaining to the enforceability of the Chambers long-term agreement. The district court never addressed this issue.

The court did consider DEP's contingent plan approval sufficient to justify enforcing the Chambers contract in the absence of DEP approval of some other plan.[0] The court, however,

---

[0]Chambers emphasizes the full text of this passage, while the Authority looks only to the last clause.
[0]The court stated in its November 20, 1992 Memorandum that: "Because use of the Chambers' landfill is approved as a contingency, and because [DEP] has approved no other plan for disposal of solid waste in the 1992-2002 period, the PCUA is obligated both under its Long-Term Agreement and under New Jersey state law to continue to use Chambers' landfills."

did not resolve specifically whether DEP's original approval in 1987 made Chambers the exclusive out-of-state waste disposal company for Passaic County waste after December 1, 1992, should PCUA fail to develop in-state waste disposal facilities. Nor did it address whether the Authority could seek a DEP order authorizing it to use an alternative out-of-state waste disposal facility without violating its contract with Chambers.[0]

Chambers next claims that the Authority itself acted as if it expected Chambers' landfills to accept Passaic County waste for the "long-term" period of the agreement. Chambers maintains that the Authority commissioned reports to determine whether Chambers had the capacity to fulfill its obligations to the Authority for the entire period of the long-term agreement. For example, the July 1991 Alaimo Capacity and Monitory Report of the Chambers' landfills commissioned by the Authority, treats the Chambers agreement as providing for disposal of Passaic County waste for the duration of the long-term agreement. Chambers argues that this report demonstrates that the Authority expected to use Chambers for waste disposal after the short-term contract expired. The Authority does not address this issue on appeal.

Additionally, neither party discusses the complaint filed by the Authority on September 9, 1992, in the Superior

---

[0]DEP has deferred to the courts for resolution of this issue. In its October 7, 1993 Certification, DEP specifically notes that: "Chambers has filed a damages claim in the Western District of Pennsylvania. [Thus], it is in a position to be made whole if the approval of the Empire Agreement is ruled an event under the Chambers contract which entitles Chambers to its contractual damages." October, 7, 1993 Certification.

10

Court of New Jersey Law Division, but the complaint lends further support to Chambers' arguments.  In the action against Chambers, Empire, and DEP, the Authority noted that on June 14, 1987, Passaic County adopted a plan amendment which called for reliance upon the Chambers agreements as the County's primary landfill disposal system from December 1, 1987, through the year 2002. The complaint also alleged that due to changes in market conditions, "the PCUA has now determined that it can save its citizens and ratepayers substantial sums of money after 1992" by entering into the MOU with Empire.

The Authority, therefore, brought an action for a declaratory judgment declaring, inter alia, (1) that PCUA is not liable to Chambers for failure to perform under the License Agreements after 1992 if such performance is due to existence of a later-approved primary disposal alternative; (2) declaring that PCUA may terminate its License Agreements with Chambers upon payment of exclusive recovery damages in accordance with section 9.3 of the contract; and (3) restraining Chambers from interfering with PCUA's obligation to secure contractual arrangements to provide safe, adequate, and economical services to its ratepayers and citizens.  This complaint suggests that the Authority believed that its contract with Chambers was enforceable.

Finally, Chambers contends that the Authority violated the covenant of good faith and fair dealing by entering into the Empire contract and submitting it to DEP for approval and that this precludes entering summary judgment in the Authority's

11

favor.[0]  Under New Jersey law, every contract contains a covenant of good faith and fair dealing which provides that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract . . . ."  Bak-A-Lum Corp. of America v. Alcoa Bldg. Products, Inc., 351 A.2d 349, 352 (N.J. 1976) (citations omitted, quotation omitted).  The Authority does not dispute this.

However, the magistrate judge considered only whether the implied covenant of good faith obligated the Authority to "repeatedly resubmit" the Chambers plan to DEP for approval.  He completely ignored the district court's injunction which provided that the Authority "shall continue operating under the terms and conditions of the Long-Term Agreement" in its waste disposal unless directed to the contrary by a valid DEP order.

Moreover, neither the district court nor the magistrate judge addressed the Authority's possible bad faith by affirmatively entering into a contract with Empire and actively seeking DEP approval for that contract.[0]  Whether the Authority violated the covenant of good faith and fair dealing by entering

---

[0]Chambers also argues that the 1993 DEP approval of the Empire contract does not justify the Authority's breach because DEP did not accord Chambers sufficient process.  We reject this argument. DEP is a state administrative agency which is not a party to this action.  Moreover, under New Jersey law, Chambers could have appealed the DEP decision to the Appellate Division of the New Jersey Superior Court. N.J. Ct. R. 2:2-3.

[0]Affirmatively attempting to avoid the terms of a contract appears to be a violation of the covenant of good faith in New Jersey. Cf. Leadership Real Estate v. Harper, 638 A.2d 173, 191 (N.J.Super. 1993); Nolan v. Control Data Corp., 579 A.2d 1252, 1257-62 (N.J.Super. 1990); Bak-A-Lum Corp. of America, 351 A.2d at 352.

12

into the waste disposal contract with Empire, or by seeking DEP approval for it, is critical to the resolution of the Chambers contract claim and the related request for damages.

The district court commented in its memorandum order that had there been evidence in the record to support Chambers' counsel's assertion that the Authority as late as 1992 indicated that the contract would be performed on a long-term basis, it would have found that New Jersey precedent "required a hearing into whether the PCUA breached a duty of good faith performance of its contract with Chambers." The court concluded after reviewing the record that whether PCUA breached its duty of good faith to Chambers "is purely one of law, which the magistrate judge adequately analyzed."

As we pointed out above, the magistrate judge did not adequately analyze all of the issues raised by Chambers. Additionally, there is considerable evidence of record which warrants an evidentiary hearing and precludes a disposition of this appeal as a simple question of law. Passaic County on June 24, 1987, amended its approved district solid waste management plan to include the Chambers landfill system as the primary landfill for the disposal of the County's solid waste. As we have already noted, the amendment was rejected and modified in part with respect to the waste disposal for the period 1992 to 2002. DEP thereupon "modified the amendment to reflect approval of the long-term use of these facilities as a component of Passaic County's Contingency Plan." DEP never nullified the Chambers contract. The 1987 directive dealt with the Authority's

13

waste disposal plan and its certification addressed the plan. Any effort to change, modify, or rescind that contract remained the responsibility of the parties. Apparently, the contract remained unchanged.

Therefore, the obligation to comply with DEP's instruction regarding long-term waste disposal remained with PCUA. Judge Stapleton, in his concurrence, believes that on this record the Authority, had it filed a motion, would have been entitled to summary judgment. We do not decide the merits of the underlying dispute, however, because there are unresolved material issues of fact regarding the Authority's obligations under the Chambers unaltered and unrescinded long-term agreement which can only be resolved by an evidentiary hearing. Besides, on a motion for summary judgment Chambers would have been entitled to the benefit of all inferences.

The long-term agreement contained no express provision requiring that it be subject to approval of DEP. The contract, however, could not be implemented unless DEP approved the amended county plan. Not having approved the Authority's plan in toto, DEP's 1987 enigmatic contingency certification relating to the long-term waste disposal left the meaning of the Chambers long-term contract susceptible to more than one interpretation. Did the certification mean that the Chambers contract would be effective in all its terms in the event PCUA failed to develop in-state waste disposal options? Or did it mean the certification effectively rendered the long-term agreement a nullity permitting it to be replaced at the will and whimsy of

14

the Authority?  This ambiguity creates questions of fact

susceptible to more than one meaning which preclude summary

judgment.  Therefore, extrinsic evidence that objectively will

illuminate its meaning, especially the conduct of the parties,

will be helpful.  In 1987, the Authority submitted its solid

waste plan to DEP for amendment as required by state statute so

that DEP could determine whether the contract conformed to the

amended plan.  DEP rejected the plan amendment (not the

contract), not because of the intrinsic provisions of the

contract, but because the amendment did not provide for in-county

waste disposal facilities after the expiration of the Chambers

short-term agreement.[0]

The concurrence states (typescript at 2) that the

Authority "at the DEP's direction, took a fresh look at the

---

[0]New Jersey, under its Solid Waste Management Act (Act),
established a statutory framework within which all solid waste
collection, disposal, and utilization activity in the state could
be controlled.  In re Long-Term Out-of-State Waste Disposal
Agreement etc., 568 A.2d 547, 549 (N.J. Super.), cert. denied,
583 A.2d 337 (1990); N.J.S.A. 13:1E-2(b)(1).  "It sought to
regulate such activity by means of a comprehensive state and
regional planning program."  568 A.2d at 549.  To accomplish this
goal, each of the counties in the state was required to develop a
solid waste management plan.  Passaic County developed such a
plan and apparently created the Authority to implement it.  The
Act directed DEP to review each county's waste disposal plan
according to statewide objectives, criteria, and standards and to
approve, modify, or reject each county plan.

In 1975, New Jersey amended the Act in an effort to ensure that
all contracts relating to solid waste disposal conformed to the
applicable solid waste disposal plan.  The Act provided that any
contract entered into after the effective date of the Act must
conform to the applicable provisions "of the approved solid waste
management plan of the relevant solid waste management district
or unless such contract is approved by the Commissioner."
N.J.S.A. 13:1E-29b.

15

available options" in 1992.  We can see nothing in DEP's 1987 certification of the Authority's plan amendment that amounted to a directive permitting it to take a fresh look at options in 1992.  The 1987 directive rejected the district plan's designation of Chambers for waste disposal during the long-term period, but modified the plan to include Chambers as a component of the Authority's contingency plan.  It also directed Passaic County within forty-five days of the date of certification to submit for state level review its plan, inter alia, for inter-district agreements on an interim emergency basis "and the identification of alternative landfilling options."

During the forty-five day period or the five-year period following the execution of the long-term agreement, the Authority did nothing to rescind, modify, or alter its agreement with Chambers.  However, just prior to the expiration of the short-term agreement, it negotiated a long-term agreement with Empire because "PCUA has now determined that it can save its citizens and rate payers substantial sums of money after 1992."[0]  Did the Authority's passivity over the five years evince an acquiescence in the Chambers long-term agreement?[0]

---

[0]The concurrence attaches some significance to DEP's 1993 approval of the Empire contract.  This approval had no effect on the Authority's obligations under the Chambers long-term contract.  DEP's approval of the Empire contract signifies only that the Empire contract conforms to the New Jersey waste disposal plan.

[0]The 1987 certification instructed the Authority to renegotiate any contracts to bring them into conformity with DEP's modifications to Passaic County's solid waste disposal plan within 90 days.  The Authority apparently did not renegotiate the Chambers agreement.

16

Praiseworthy as the Authority's desire to save money may be, it cannot justify the breach of a valid and enforceable contract. The sanctity of a contract is a fundamental concept of our entire legal structure. Freedom of contract includes the freedom to make a bad bargain. "It is a fundamental principle of contract law, therefore, that, wise or not, a deal is a deal." Morta v. Korea Ins. Corp., 840 F.2d 1452, 1460 (9th Cir. 1988) (quoting United Food & Commercial Workers Union v. Lucky Stores, Inc., 806 F.2d 1385, 1386 (9th Cir. 1986)). Were this not the law, no one, including a municipality or authority would be able to enter into any long-term contract.

On remand, the district court should first determine the effect of the 1987 DEP certification on the Chambers long-term agreement. In connection, it should ascertain whether the Authority evinced an understanding that the Chambers long-term agreement was still binding by commissioning the 1991 Alaimo report and other similar reports. It should also determine as a fact the Authority's purpose in filing its complaint in the New Jersey State Court and whether it supported Chambers' contention that it and the Authority knew they had a binding contract in place, subject only to the Authority's compliance with the DEP certification. Finally, the court must factually determine whether the Authority was attempting to disengage itself from obligations under its long-term contract with Chambers because in 1992 it could secure a contract with Empire at better prices and whether it violated the covenant of good faith and fair dealing in so doing.

17

## III.

The district court entered summary judgment as a matter of law against Chambers with respect to its claim for breach of good faith and damages without conducting an evidentiary hearing with respect to a number of material issues of fact. The court also impermissibly entered summary judgment for the Authority on the damages question. The court's order adopting the Report and Recommendation of the magistrate judge must therefore be vacated. The court's judgment in favor of the defendant on Chambers' claim for damages will also be vacated. The case will be remanded to the district court for further proceedings consistent with this opinion, with the privilege to Chambers to amend its complaint to enable it to present the case in its current status.

Costs taxed to the Authority.

CHAMBERS DEVELOPMENT COMPANY, INC., ET AL. v.

PASSAIC COUNTY UTILITIES AUTHORITY,

No. 94-3475


STAPLETON, Circuit Judge, concurring:

I agree that the district court improperly entered summary judgment for a

which had not moved for it and, accordingly, that a remand is required. I take a v

this case materially different from that of my colleagues, however.

The parties agree, as they must, that the short and long term agreements

them were conditioned on DEP approval. The Authority can effectively commit itself

respect to solid waste disposal only if and to the extent that it is authorized by

DEP.[0] The short term agreement was approved by the DEP. The long term agreement w

rejected. The DEP did, however, approve the Authority's performance of its long te

agreement with Chambers as a part of a contingency or "back up" plan[0] and ordered t

Authority to formulate and propose an alternative, primary plan. Performance by th

Authority of the long term agreement was thus approved only in the absence of an ap

---

[0]  N.J.S.A. 13:1E-29b.

[0]  The DEP approved "the designation of the Chambers Development Company, Inc. land
system in Pennsylvania and other states as a component of Passaic County's continge
plan for the disposal of ash, by-pass, and non-processable waste associated with th
operation of the [then contemplated] Passaic County resource recovery facility for
time the facility is operational until the year 2002." App. at BA 24. The resourc
recovery facility was never constructed.

20

alternative plan, or stated conversely, the DEP did not sanction performance of the

term agreement when an alternative plan suitable to the DEP was in operation.[0]

Contrary to Chambers' assertion, the DEP's directive to the Authority to

formulate an alternative, more acceptable, plan did not limit the Authority to

consideration of waste disposal programs involving solely in-state disposal sites.

is apparent both from the text of the DEP's certification and from the fact that th

subsequently approved a long term plan involving out-of-state waste disposal by Emp

When the Authority, at the DEP's direction, took a fresh look at the avai

options, it found an alternative approach that it considered more in keeping with t

interest of its constituents and that it hoped would be acceptable to the DEP.  As

directed, it filed a petition with the DEP for approval of a long term solid waste

management plan.  This plan involved, <u>inter</u> <u>alia</u>, a proposed agreement to send 600-

tons per day of Passaic County's waste to the Bergen County Utilities Authority, an

interdistrict Agreement with Union County for Passaic's bulky wastes, and a 15 year

---

[0]  The district court, in its November 1992 decision, correctly read the DEP's 1987

certification in this way.  Its November 20, 1992, injunction read:

> Unless and until directed to the contrary by a valid certification of
> the New Jersey Department of Environmental Protection and Energy, the
> PCUA shall continue operating under the terms and conditions of the
> Long-Term Agreement for the Grant and Acquisition of a License for Ash
> Residue Waste Disposal. Provided, however, that <u>nothing in this Order</u>
> <u>shall be construed as restricting any proceeding by any party before</u>
> <u>the NJDEPE seeking approval or disapproval of any primary long-term</u>
> <u>plan for the disposal of municipal solid waste by the PCUA.</u>

App. at BA 33 (emphasis supplied).

[0]  Thus, the November 20, 1992, injunction made it clear that, despite the long ter

agreement and the 1987 DEP certification, "any party" was free to seek DEP approval

<u>any</u> primary long term plan."  App. at BA 33 (emphasis supplied).

disposal contract with Empire.  The Empire contract called for out-of-state disposa[l]

site much closer to Passaic County than Chambers' disposal sites and for significan[t]

lower disposal rates.  As Chambers acknowledges, the DEP, at least at this point, w[as]

responsible for considering the economic as well as the environmental aspects of di[sposal]

plans.

The DEP did not give immediate, unconditional approval to the Authority's [long]

term plan.  However, on October 7, 1993, it did approve the Empire Agreement for an

initial term of two years with a possible renewal for three years.  With respect to [it]

and other aspects of the plan, the DEP ordered that further data and analysis be su[bmitted]

and that the Authority continue to seek in-state disposal capacity.

It is difficult for me to see how Chambers can complain in this context. [It]

knew that the long term agreement was subject to DEP approval.  It further knew fro[m the]

day of the 1987 certification that it would have no enforceable right to the Author[ity's]

waste if the Authority could come up with a means of disposal that the DEP found

preferable to the arrangement with it.  If Chambers did not like its position after [the]

1987 certification and felt, understandably, that the approved contingent arrangeme[nt was]

fundamentally different from the arrangement to which it had agreed, I am confident

no court would have held it bound to the restructured agreement.

I find it even more difficult to understand how Chambers can fault the

Authority.  The Authority submitted the long term agreement to the DEP and pursued [it in]

good faith. When its application was rejected and it was ordered to submit an alter[nate]

primary plan, it did so.  While Chambers argues that the DEP's limited approval of [the]

3

Empire agreement was inconsistent with its 1987 certification, that complaint is ab

DEP, not the Authority.

In my view, the district court correctly concluded on the basis of the cu

record that the Authority breached no covenant of the long term agreement, express

implied, and that no amount of purported "reliance by Chambers can . . . remove the

Commission's power to certify another solid waste plan."  App. at BA 31.

I find unpersuasive the argument that the Authority breached an implied c

good faith by proposing an operator of an out-of-state site other than Chambers in

alternative primary plan.  As the magistrate judge explained, the purpose of New Je

"good faith covenant" rule is not to impose a duty beyond the original intent of th

parties, but rather to prevent a party from taking action which frustrates that int

The rule is intended to preserve for a party only "the fruits of the contract."

Associated Group Life, Inc. v. Catholic War Veterans of U.S., 293 A.2d 382, 384 (N.

1972).  If the Authority, for example, had failed to submit the long term contract

DEP for approval or had prosecuted an application for approval in a manner that cau

rejection, the Authority would have breached its covenant of good faith.[0]  It is

---

[0]  Chambers relies heavily on Illustration 4 of Restatement (Second) of Contracts §
(1979):

> A contracts to sell and B to buy A's rights as one of three
> lessees under a mining lease in Indian Lands.  The contract states
> that it is "subject only to approval by the Secretary of the
> Interior," which is required by statute.  B files a request for
> approval but A fails to support B's request by giving necessary
> cooperation.  Approval is denied and A cannot convey his rights.  B
> has a claim against A for total breach of contract. A's breach of his
> duty of good faith and fair dealing contributed materially to the non-
> occurrence of the condition, approval by the Secretary of the
> Interior, excusing it.

4

undisputed here, however, that the Authority submitted the long term agreement to t

and was not responsible for its rejection. To the extent Chambers' complains about

Authority, it complains of the Authority's conduct in response to the rejection of

long term agreement. But, as the magistrate judge correctly noted, there is no ind

in this record that the parties, "when they negotiated the Long-Term Agreement in 1

had any meeting of the minds concerning the action that they would take if the [DEF

rejected the agreement as the primary plan and accepted it as a contingent plan onl

App. at BA 11. Thus, the conduct of the Authority relied upon by Chambers as a bre

the covenant of good faith did not frustrate the intent of the parties at the time

contracting.

On this record, I believe the Authority, had it filed a motion, would hav

entitled to summary judgment. It did not so move, however, and Chambers accordingl

no obligation to build a record in opposition to the Authority's theory of the case

therefore concur in the court's judgment remanding this case for further proceeding

---

[0] Chambers litigated its motion primarily on the theory that the legal effect of t
term agreement and the 1987 DEP certification was to make it the exclusive supplier
out-of-state disposal services for the 15 years of the contract. It tendered no ev
if any there be, regarding a mutual expectation of what would occur in the event th
rejected their arrangement as presented.

5